BOARD OF TRUSTEES OF the LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA, and Marvin D. Johnson, as Secretary of the Board of Trustees, Plaintiffs,

v.

Clevon LEVINGSTON and Leola Levingston, Defendants.

No. C 92–2919 FMS.

United States District Court, N.D. California.

March 9, 1993.

Thomas E. Stanton, Bruce K. Leigh, Stanton Kay & Watson, San Francisco, CA, for plaintiffs.

R. Bradford Huss, Amiram J. Givon, Trucker, Huss, Klamm & Sacks, San Francisco, CA, for defendant Leola Levingston.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

FERN M. SMITH, District Judge.

On December 22, 1992, the Court denied Defendants' Motion to Dismiss. The parties have now filed cross-motions for summary judgment which squarely present the issue of whether California state courts have the authority to determine whether a Domestic Relations Order is a Qualified Domestic Relations Order ("QDRO") for purposes of ERISA and to order an ERISA plan administrator to comply with the terms of that order. For the reasons set forth below, the Court finds that concurrent jurisdiction exists in this area of ERISA and therefore GRANTS the Defendants' Motion for Summary Judgment and DENIES the Plaintiffs' Motion for Summary Judgment.

## BACKGROUND

Defendants Clevon and Leola Levingston were married on May 15, 1971 and separated on September 30, 1987. On December 5, 1988, Alameda County Superior Court entered a judgment of dissolution but reserved jurisdiction over the division of the Defendants' community property. On December 30, 1988, Clevon married Yvonne Levingston.

Clevon had participated in the pension plan ("the Plan") maintained by Plaintiffs ("the Fund"). The Plan is a multiemployer, defined benefit pension plan and is subject to ERISA. On September 30, 1988, the Fund was joined in the Levingston dissolution proceeding pursuant to Cal.Civil Code § 4363.1. The Fund entered an appearance in that proceeding on November 30, 1988.

In March 1989, Clevon terminated his employment and applied for benefits under the Plan. Sections 7.01 and 7.03 of the Plan require that a married participant be paid benefits in the form of a "Husband-and-Wife Pension", unless the spouse consents to a different form of distribution under the plan. A "Husband-and-Wife Pension" is a type of "joint and survivor annuity" which pays a lifetime monthly benefit for the life of the participant, with one-half of the monthly amount payable to the participant's surviving spouse after the participant's death. In accordance with 29 U.S.C. § 1055, a married participant must elect the joint and survivor option unless the spouse consents to another form of payment, such as the Single Life Pension which consists only of monthly payments for the life of the participant.

Starting in April 1989, Clevon received Husband-and-Wife payments while one-half of the normal benefits accrued during his marriage to Leola was withheld pending a determination of Leola's community property interests. Leola filed a motion in Alameda County Superior Court requesting a division of her interest in the pension. On March 7, 1991, the court approved a stipulation between Clevon and Leola which provided for Leola to receive a monthly benefit for her life that was the *actuarial equivalent* of her share of the benefits payable for Clevon's life, using the interest and mortality assumptions specified by the terms of the Plan.

This order was submitted to Plaintiff Johnson, the Plan's administrator who concluded that this order was not a QDRO and therefore the Fund was not obliged to make payments under the order. The state court then issued an order to show cause directing the Fund to show why the order was not a QDRO. A hearing was held on September 23, 1991. The Fund did not appear at the hearing or file an opposition brief. On January 22, 1992, the state court issued an order holding that:

(1) the March 7, 1991 order was a QDRO under ERISA and the Retirement Equity Act ("REA");

(2) the Fund had notice of the hearing;

(3) the March 7, 1991 order did not require payment of benefits that exceeded Leola's rights under ERISA or REA;

(4) the Fund was further ordered to qualify the March 7, 1991 order and pay benefits pursuant to the order.

The Fund did not move to set aside or modify the order.

On March 31, 1992, the Fund appealed to the California Court of Appeal. Alameda County Superior Court entered an order directing the Fund to pay $10,000 attorneys fees for Leola's expenses in defending the appeal pursuant to Cal.Civil Code §§ 4370 and 4370.5. On August 13, 1992, the Court of Appeal stayed the appeal and ordered the Fund to pay the attorneys fees by October 1, 1992. The Fund did pay those fees and the Court of Appeal issued a published decision, *In re Marriage of Levingston,* 93 C.D.O.S. 696 (January 28, 1993), holding that state courts do have concurrent jurisdiction to review a plan administrator's decision that a particular order is not a QDRO.

The Fund filed this action in Federal Court on July 28, 1992, seeking injunctive and declaratory relief pursuant to 29 U.S.C. § 1132(a)(2) and (a)(3). After receiving the complaint in this case, Leola filed a motion in state court for an order directing the Fund to pay attorneys fees in this action. A hearing on that motion was held on September 14, 1992, and the Fund made no appearance. The Superior Court then entered an order requiring the Fund to pay Leola's fees in this action. The Fund contends that it never received notice of the hearing and order until October 15, 1992. The Fund has moved to set aside that order in Superior Court and the hearing on that motion has been continued until April 21, 1993 to account for the results of this motion.

## ANALYSIS

 This motion squarely presents the issue of whether state courts have final authority to determine whether a domestic relations order is a "qualified" domestic relations order for purposes of ERISA and to order ERISA plan administrators to distribute fund assets in compliance with the terms of a particular domestic relations order.

Plaintiffs contend that as plan administrator, they have a fiduciary duty to ensure that no payments are made which violate the terms of the Plan. This duty includes the

obligation to review domestic relations orders and determine whether they require distribution of plan assets in a way not permitted under the Plan. Where they make such a determination, the domestic relations order is not "qualified" within the meaning of 29 U.S.C. § 1056(d)(3)(B)(i) and they have no obligation to comply with the order. The Plan contends that since federal courts have exclusive jurisdiction over civil suits brought by a plan fiduciary to "enjoin any act or practice which violates any provision of" ERISA, 29 U.S.C. § 1132(a)(3), the Plan's actions in this context may be reviewed only by the federal courts. 29 U.S.C. § 1132(e)(1).

The Plan's theory has some appeal and, in fact, was sufficient to defeat Defendants' Motion to Dismiss, denied by this Court on December 22, 1992. A problem arises, however, from an ambiguity created by the second sentence of § 1132(e)(1). The second sentence provides concurrent jurisdiction for actions under § 1132(a)(1)(B), which allows a participant or beneficiary to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Leola's action in state court to enforce the domestic relations order properly falls within § 1132(a)(1)(B) because she fits the ERISA definition of "beneficiary." *See* 29 U.S.C. § 1056(d)(3)(J) ("A person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision in this chapter a beneficiary under the plan") and 29 U.S.C. § 1056(d)(3)(K) ("The term 'alternate payee' means any spouse, former spouse, child or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of the benefits payable under a plan with respect to such participant"). Thus, the literal terms of the statutory scheme create the bizarre situation in which the state court has jurisdiction to hear Leola's suit to enforce the domestic relations order while federal courts have exclusive jurisdiction over the Plan's suit to block enforcement of the order. Plainly, this is not what Congress envisioned when it created these provisions.[1]

---

1. Further complicating the legislative scheme is

the fact that § 1056(d)(3)(K) defines alternate

There are several reasons to suspect that Congress intended state courts to resolve the issue of whether a particular domestic relations order is qualified. The only statutory provision that directly mentions this issue provides that:

> During any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (by the plan administrator, *by a court of competent jurisdiction,* or otherwise), the plan administrator shall separately account for amounts [in dispute].

29 U.S.C. § 1056(d)(3)(H)(i) (emphasis added). While this section is hardly dispositive, it seems that if Congress wished to limit jurisdiction to federal courts it would not have used the general term, "court of competent jurisdiction." *United States v. Handy,* 761 F.2d 1279, 1280 (9th Cir.1985) ("A statute should be construed so as to avoid making any word superfluous"). Moreover, the provision that creates concurrent jurisdiction, § 1132(e)(1), refers to *"State courts of competent jurisdiction* and district courts of the United States," thus indicating, albeit obliquely, that the general term "court of competent jurisdiction" refers to state *or* federal courts as specified in the second sentence of § 1132(e)(1).[2]

The Fund does present an interesting piece of legislative history which suggests a contrary interpretation, however. In *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1498 (9th Cir.1984), the Ninth Circuit dealt with an unrelated aspect of federal ERISA jurisdiction,[3] but cited a Con-

ference Committee Report interpreting federal and state jurisdiction under the *original* ERISA statute:

> Under the conference agreement, civil actions may be brought by a participant or beneficiary to recover benefits due under the plan, to clarify rights to receive future benefits under the plan, and for relief from breach of fiduciary responsibility. The U.S. district courts are to have exclusive jurisdiction with respect to actions involving breach of fiduciary responsibility as well as exclusive jurisdiction over other actions to enforce or clarify benefit rights provided under title I [the remedial provisions described below, now codified at 29 U.S.C. §§ 1021–1114]. However, with respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Action of 1947.

H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 5038, 5107.[4]

This legislative history is not dispositive for several reasons. First, the Conference Report pre-dates the enactment of the QDRO-related provisions by ten years. *See*

---

payee as someone under a "domestic relations order," as opposed to a qualified domestic relations order, while § 1056(d)(3)(J) grants alternate payees under a *"qualified* domestic relations order" the status of a beneficiary. The difference in language between these two sections sheds little light on the specific jurisdictional question presented in this motion.

2. The Fund cites a considerable portion of the detailed provisions in 29 U.S.C. § 1056(d)(3) which specify how the plan administrator should proceed in determining whether a domestic relations order is qualified. A potential beneficiary under a domestic relations order has a right to judicial review of the plan administrator's decision, and neither the provisions cited nor the accompanying legislative history sheds any light on whether state courts can provide this review.

3. The Court held that federal district courts did not have jurisdiction over ERISA claims based on conduct that occurred before January 1, 1975, ERISA's effective date.

4. The Fund argues that the reference to "arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947" indicates that the state court action was inappropriate because the Fund's appearance in state court was solely the result of it being joined pursuant to Cal.Civil Code §§ 4363.1–4363.3, and not under any federal law. The Fund reads too much into this reference. All the reference to section 301 means is that state courts interpreting ERISA provisions must look to federal common law. *Menhorn,* 738 F.2d at 1499; *Id.* at 1500 n. 2 ("State as well as federal courts may be expositors of federal law").

*Pierce v. Underwood,* 487 U.S. 552, 567, 108 S.Ct. 2541, 2551, 101 L.Ed.2d 490 (1988) (little weight given to committee report when offered to interpret language which that committee did not draft); *Hadden v. Bowen,* 851 F.2d 1266, 1268 (10th Cir.1988) (little weight given to legislative history "that is not contemporaneous with the language" at issue). Simply because Congress implemented the QDRO provisions by creating an amendment to § 1056 does not mean that Congress intended QDRO related issues to be treated in the same manner as other title I provisions for jurisdictional purposes. In fact, this intention is belied by the fact both the QDRO amendments and the accompanying legislative history still refer to QDRO determinations by a "court of competent jurisdiction," an unnecessary description if Congress intended the only court with jurisdiction to be the federal district court. *See* 29 U.S.C. § 1056(d)(3)(H)(i); Pub.L. 98–397, 1984 U.S.Code Cong. and Ad.News 2547, 2568.

Moreover, the Conference Report does not mesh with the plain language of § 1132(a)(1)(B). § 1132(e)(1) provides concurrent jurisdiction for all actions under that section, and nothing in § 1132(a)(1)(B) limits its scope to actions which do not require the application of title I provisions. By its own terms, § 1132(a)(1)(B) broadly covers any action to recover, enforce, or clarify benefits, without regard to which ERISA provisions must be applied during the action. *See U.S. v. M.I.M.,* 932 F.2d 1016, 1019 (1st Cir.1991) ("Where alleged 'intent' expressed in a legislative report is in direct conflict with the apparent intent as manifested in the words of the statute themselves, we surely must apply the statute rather than the report; after all, it is the statute, not the report, that was enacted by Congress.").

In light of the specific use of the general term, "court of competent jurisdiction" in the 1984 amendments, the most likely inference is that Congress presumed that both state and federal courts would be reviewing QDRO determinations.

This reading of the statute is further supported by considerations of judicial economy and fairness to the party seeking community property rights in the pension. As the California Court of Appeal recently noted:

There already is a state court action, the marital dissolution action, to which the plan is a party. Thus, a motion in that court is simple, inexpensive, and expeditious. We do not believe Congress, having given state courts the power to issue orders determining and dividing marital rights in retirement plans, would require a separate federal court proceeding to decide whether or not the order is a QDRO. This would cause hardship, expense, and delay to the affected party, and impose an unnecessary workload on already overburdened federal courts. The result we reach carries out the purpose of Congress in amending ERISA in 1984 by enactment of the Retirement Equity Act to benefit spouses and former spouses, and especially to protect the rights of the nonemployee spouse in the employee's pension benefits.

*In re Marriage of Levingston,* 93 C.D.O.S. 696, 697 (January 28, 1993).

Finally, allowing state courts to review QDRO determinations will not undermine uniform national treatment of pension benefits. *See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9–11, 107 S.Ct. 2211, 2216–17, 96 L.Ed.2d 1 (1987) (emphasizing that ERISA plans should not be subjected to a patchwork of obligations imposed by differing state laws). State courts adjudicating whether a particular domestic relations order is qualified will still have to apply the statutory criteria set forth in 29 U.S.C. § 1056 and therefore will not be subjecting ERISA plans to the vagaries of state law. As the Ninth Circuit noted in *Menhorn:*

Congress' choice to vest jurisdiction over one class of ERISA civil actions in both the state and federal courts is in no way inconsistent with its intent to create a comprehensive scheme of federal common law in the area. State as well as federal courts may be expositors of federal law.... Congress simply increased the number of forums to which a claimant might have access in these cases, presumably both to increase the claimant's options and also to mitigate to some degree the burden on the federal courts resulting from ERISA.

738 F.2d at 1500 n. 2.

Nor is this result inconsistent with the concerns expressed in *Hydrostorage v.*

*Northern Cal. Boilermakers,* 891 F.2d 719 (9th Cir.1989). This Court agrees that ERISA preemption is "deliberately expansive and designed to establish pension plan regulation as exclusively a federal concern." 891 F.2d at 729. In addition, this Court recognizes that the Supreme Court "vigorously has enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar." *Patterson v. Shumate,* 504 U.S. ——, ——, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992). This case involves a specific and express exception to the ERISA scheme, however, in which Congress chose not to apply preemption to state court domestic relations orders that meet certain criteria and chose to exempt those orders from ERISA's spendthrift provisions. *Ablamis v. Roper,* 937 F.2d 1450, 1455 (9th Cir.1991) ("in the case of QDROs the REA provides a 'limited exception' to the anti-assignment provision for certain specified types of domestic relations property allocations. Because orders providing for such allocations are not subject to the anti-assignment provision, no preemption issue arises as to them.").

The Court finds that a careful parsing of the statutory scheme indicates that Congress intended state and federal courts to have concurrent jurisdiction in determining whether a particular domestic relations order is qualified. Since the state court had jurisdiction to make that determination in this case, the Court need not address the Plan's substantive contention that the specific terms of Leola's domestic relations order do not meet the statutory criteria for a qualified domestic relations order. Summary Judgment is therefore GRANTED in favor of the Defendants.

## ATTORNEYS' FEES

Defendants have requested attorneys' fees for pursuing this action in accordance with 29 U.S.C. § 1132(g). In addition, Plaintiffs have the challenged the Superior Court's award of attorneys' fees for pursuing the state court appeal and for pursuing this action. Since the California Court of Appeal remanded the issue of fees on appeal, that issue is not properly before this Court. Similarly, while the Court is unaware of any

authority that would allow the Superior Court to award fees for pursuing an action in federal court, or vice versa, the Superior Court has not yet ruled on the motion to set aside the fee award, and therefore the issue is not ripe for review by this Court.

In view of these unresolved state court issues, the Court DEFERS ruling on Defendants' request for fees under 29 U.S.C. § 1132(g). The Court notes, however, that this case involved a difficult question of law on which little case law existed. The Court does not believe that Plaintiffs instituted the federal action simply to make an end-run around the state courts or to otherwise obstruct Leola's attempt to claim her right to pension benefits. ERISA is a difficult area of law with many unanswered questions, and the Court found Plaintiffs' position to be neither frivolous nor overreaching.

SO ORDERED.