The **MANUFACTURERS LIFE INSURANCE CO, Plaintiff,**

v.

**EAST BAY RESTAURANT AND TAVERN RETIREMENT PLAN, et al, Defendants.**

**No. C–98–1813 VRW.**

United States District Court, N.D. California.

July 20, 1999.

---

**922**

Robert Levy, Randall Doctor, Barger & Wolen, San Francisco, CA, for plaintiff.

Matthew Ross, Peter Saltzman, Leonard, Carder, Nathan, Zuckerman Ross, Chin & Remar, Oakland, CA, Matthew Ross, Peter Saltzman, Leonard, Carder, Nathan, Zuckerman Ross, Chin & Remar, San Francisco, CA, Peter Southworth, Office of the Attorney General of the State of California, Sacramento, CA, for defendants.

## AMENDED ORDER.

WALKER, District Judge.

Before the court is the plan defendants' motion for summary adjudication. The plan defendants assert that the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC § 1001 et seq, preempts California's Unclaimed Property Law (UPL), CCP § 1500 et seq, as applied to certain funds held by plaintiff. These funds are held with respect to missing participants in the Pension Plan of East Bay Restaurant and Tavern Unions and Employers. For the reasons stated below, the court holds that ERISA preempts the California UPL in this instance.

ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. See *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The statute does not mandate that employers provide any particular benefits. But, for employers that provide certain benefits, ERISA imposes various requirements and sets various uniform standards, including rules concerning reporting, disclosure and fiduciary responsibility.. See 29 USC §§ 1021–1031, 1104–1114, 1051–1086. The statute does not prescribe any particular procedure for the handling of benefits that are awarded but uncollected, nor does it specify a time limit for honoring such claims.

■ The statute does provide an express preemption provision. See 29 USC § 1144(a) (preempting any regulation that "relates to" an ERISA plan). The Supreme Court has stated that "the express preemption provisions of ERISA are deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (internal quotations omitted). The words "relate to" in section 514(a) are, therefore, to be interpreted broadly.

Although this court must strive to give effect to the full purpose and objectives of the federal statute, at the same time it must assume "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978). Escheat of abandoned property is such an area of traditional state authority. See *Connecticut Mutual Life Insurance Co. v. Moore*, 333 U.S. 541, 547, 68 S.Ct. 682, 92 L.Ed. 863 (1948).

Congress, in seeking to preempt all state laws that "relate to" employee benefit plans, could not possibly have meant to preempt all laws having any impact on such plans, no matter how small or tangential. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 100 n. 21, 103 S.Ct. 2890. For example, ERISA has been held not to preempt a law forbidding discrimination in employee benefit programs or state garnishment of pension income to enforce alimony and support orders. See *id; AT & T v. Merry*, 592 F.2d 118, 121 (2nd Cir.1979).

■ Generally, laws that refer specifically to ERISA benefit plans and apply solely to them or interfere with the calculation of benefits owed to an employee are preempted. Laws which are of general application, often traditional exercises of state power or regulatory authority, and whose effect on ERISA plans is incidental are generally not preempted. The basic rationale behind restricting preemption is that there is no reason why employee benefit plans cannot be subject to nationally uniform supervision despite dissimilarities in their costs of doing business in various states. See *Rebaldo v. Cuomo*, 749 F.2d 133, 139 (2d Cir.1984).

In *Aetna Life Insurance Company v. Borges*, the Second Circuit held that a Connecticut escheat statute was not preempted under circumstances similar to those before the court. See 869 F.2d 142 (1989). The court did so despite the fact that the escheat law had "both an economic and administrative impact on ERISA plans." *Id* at 147. In *Aetna*, the insurance company contracted with employers to provide health and accident benefits. Not infrequently, after the insurance company approved an employee claim for benefits and issued a draft on an account to pay the claim, the employee would fail to present the draft for payment. Absent application of the escheat law, the insurance company would have retained these unclaimed benefits. Thus, escheat of the funds necessarily meant an increase in the cost of providing benefits which presumably resulted higher premiums for employers, lower benefits for employees, lower profits for the insurer or some combination of the three. In addition, the insurer was forced to make administrative and accounting adjustments to comply with the escheat law that were tied to the law's statutory period and thus could vary from state to state. This impact, however, was "too tenuous, remote and peripheral to require preemption under section 514(a)." *Id.*

The court noted that Connecticut's law had no effect on the original determination of an employee's eligibility for benefits and that the economic and administrative impact was no greater than that of garnishment laws previously found not to be preempted. See *Mackey v. Lanier Collection Agency & Service*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). Indeed, whether the insurance company or Connecticut maintained possession of the funds had no direct effect on the assets of the ERISA plan. Accordingly, the court left open the possibility that the impact of an escheat law could, under other circumstances, be great enough to trigger preemption. See *id* at 148 n. 6. And, in *Commonwealth Edison Company v. Vega*, the Seventh Circuit subsequently identified one such an instance. See 174 F.3d 870 (7th Cir.1999).

In *Commonwealth*, Illinois sought to apply its unclaimed property law to benefits payable under Com Ed's pension plan that had not been not claimed by plan beneficiaries. Under the terms of Com Ed's plan, unclaimed benefits remained in the plan's possession. The plan's only duty of search was whatever was implicit in the fiduciary obligations imposed by ERISA. See 29 USC § 1104(a). Even though the money could not revert to Com Ed unless and until the plan was terminated and determined to be overfunded, the presence of the money meant that Com Ed was required to contribute less to the plan in order to ensure the plan's ability to meet its obligations. See *id* at 872–73. Thus, the dispute between the plan and Com Ed was essentially over who could retain the interest on the funds in the interim. See *id.*

The court found that although the Illinois law did not refer explicitly to ERISA plans, it related to the Com Ed plan directly and substantially. See *id* at 873. The court noted that until the check to the beneficiary was actually presented to the plan for payment through the banking system and paid, the money due to the beneficiary was an asset of the plan. Thus, application of the Illinois law would have meant taking a portion of an ERISA plan's assets and putting it in the state treasury. After that, any beneficiary of the plan who wanted his benefits would have to apply to the state. The state would become the plan administrator with respect to those assets. The court found this fact, in combination with the plan's loss of the interest on the funds to the state and the potential costs of conforming to the various laws of the different states, to command a finding of preemption.

■ In the case at bar, the confiscation of interest and usurpation of administration sought by California compels the same conclusion. Here, the plan is entitled to request a premium refund from the insurer, ManuLife, for any annuitant not located after a certain date. See Erwin Decl,

Ex C at p61. Thus, ManuLife, unlike the insurer in *Aetna*, would not necessarily retain the funds absent application of California's unclaimed property law, but is in fact under an obligation to return such funds to the plan. Regardless of whether the unpaid benefits can properly be understood as a "plan asset," the annuity contract is itself a plan asset and its value derives directly from the refund provision's guarantee that unclaimed benefits will be returned to benefit all plan participants pending location of those missing.

The present plan is, therefore, in a position analogous to that of the plan in *Commonwealth*, not the plan in *Aetna*. This is not a simple instance where the state is attempting to step into the shoes of beneficiaries pending their location. Instead, California seeks to insert itself between the ERISA plan and an asset of the plan, the annuity contract. In *Aetna*, although escheat of the funds to Connecticut threatened to increase the cost of providing benefits and thus to have some economic impact on the plan, operation of the state law had no direct impact on plan assets. Here, however, the state wishes to seize funds to which the ERISA plan has a contractual right. While the states in all three cases attempt to secure the benefit of interest on unclaimed benefits, only California and Illinois propose to confiscate funds in which an ERISA plan has a direct financial interest.

Such facts are not analogous to garnishment. Garnishment consists merely of a state eliminating or modifying an intermediate transaction in the process by which benefits are paid to the beneficiary and seized by the creditor. In such instances the amount of plan assets is unaffected by whether the money is distributed to the beneficiary or to the beneficiary's creditor. Application of California's UPL here, however, would be a direct usurpation of the plan's position vis à vis a plan asset, the annuity contract. California is attempting not merely to govern the payout of plan benefits, but to manage plan assets. This

attempt to step into the plan's shoes, as noted by the court in *Commonwealth,* "is precisely what ERISA bars." See 174 F.3d at 874–75. The court is compelled to conclude, therefore, that application of California's UPL is preempted in this instance.

■ The parties direct a good deal of attention to the question of whether section 1515, as opposed to section 1521, of California's UPL provides the basis for escheat of the funds. The court need not resolve this question simply because, even if section 1515 applies in this instance, it is preempted for the reasons discussed above. Moreover, section 1515 is not "saved" from preemption as a law regulating insurance despite its express reference to insurance. 29 USC § 1144(b)(2)(A).

Section 1515 merely particularizes a rule of general application, a rule applicable to all holders of property subject to escheat. The concept of escheat is not limited to contracts within the insurance industry. Section 1515 does not carve out distinctive treatment for life insurance carriers; it does not attempt to transfer or spread a policy holder's risk and it does not dictate the terms of the relationship between the insurer and the insured. It is not, therefore, a law regulating insurance. See *Pilot Life Insurance,* 481 U.S. 41, 48–50, 107 S.Ct. 1549, 95 L.Ed.2d 39; *Security Life Ins. Co. of America v. Meyling,* 146 F.3d 1184, 1188–90 (9th Cir.1998).

Plan defendants' motion for summary adjudication (Doc 22) is GRANTED.

IT IS SO ORDERED.