**In re the MARRIAGE OF NASCA,**
**Peter Nasca & Denise Nasca,**
**Plaintiffs**

v.

**PEOPLESOFT, Defendant.**

**No. C 97–4639 VRW.**

United States District Court,
N.D. California.

Aug. 23, 1999.

---

Ann Riley, Law Offices of Terence Daniel Doyle, Danville, CA, for Peter Nasca, Plaintiff.

Karen Johnson, Johnson & Alexander, Walnut Creek, CA, for Denise Nasca, Plaintiff.

James M. Nelson, Diepenbrock Wulff Plant & Hannegan, Sacramento, CA, for Peoplesoft, Defendant.

## ORDER

WALKER, District Judge.

This action originated in 1994, when plaintiff Peter Nasca filed for the dissolution of his marriage to plaintiff Denise Nasca in Contra Costa Superior Court. California Family Code § 2337(c)(6)(A) requires that a party's retirement or pension plan be joined as a party to a divorce proceeding. On December 10, 1997, plaintiffs joined Peter Nasca's employer, PeopleSoft, as a party pursuant to section 2337. PeopleSoft manages Mr. Nasca's retirement plan, which is regulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

On December 18, 1997, defendant removed the action to this court. On December 23, 1997, defendant filed two motions. The first sought to sever the pension joinder issue from the divorce action and remand the divorce action to state court. The second motion sought dismissal of PeopleSoft as a party pursuant to FRCP 12(b)(6) based on ERISA preemption. On January 7, 1998, plaintiffs filed a motion to remand the entire case to state court.

The matter was referred to Magistrate Judge James Larson, who heard all three motions on January 28, 1998. Magistrate Judge Larson denied both of defendant's motions and granted plaintiffs' motion. He also awarded to plaintiff attorney fees related to the removal.

On February 27, 1998, defendant appealed both the fee award order and the order regarding the substantive motions to the Ninth Circuit. The Department of Labor filed an *amicus curiae* brief in support of PeopleSoft's appeal. On January 17, 1999,

on its own motion, the Ninth Circuit found that it did not have jurisdiction to hear the case because the parties had not followed the procedures necessary to consent to the jurisdiction of a magistrate judge. *See Nasca v. Peoplesoft,* 160 F.3d 578 (9th Cir.1999). The Ninth Circuit therefore remanded the case to this court for assignment to an Article III judge.

## I

Jurisdiction in this case is controlled by ERISA. Congress enacted ERISA in 1974 to provide minimum standards to "ensure the continued well-being and security of millions of employees and their dependents" who rely upon retirement plans. H.R.Conf.Rep. No. 93–1280, at 7 (1974). One original protection, codified at 29 U.S.C. § 1056(d), prohibited the alienation or assignment of pension benefits. As first enacted, the anti-alienation provision afforded no way for non-employee spouses to recover pension benefits upon the death of the employee spouse or upon divorce.

In 1984, Congress amended ERISA with the Retirement Equity Act ("REA"), which created an exception to the anti-alienation clause permitting ERISA beneficiaries to direct their ERISA benefits to an alternate payee, defined as a spouse, former spouse, child or other dependent. *See* 29 U.S.C. § 1056(d)(3)(k). Under this procedure, a beneficiary or alternate payee requests the change by submitting a Domestic Relations Order ("DRO"), usually issued by a state court, to the plan administrator. The plan administrator then reviews the DRO to determine whether the DRO meets the requirements for a Qualified Domestic Relations Order ("QDRO") described in 29 U.S.C. § 1056(d)(3)(B). These requirements primarily ensure that the payee designated by the DRO is a legitimate alternate payee and that the DRO does not increase the payment burden on the plan or mandate the assignment of benefits previously assigned by another QDRO. If the plan administrator determines that the DRO is indeed a QDRO, he will then direct payment to the alternate payee. If the plan administrator

determines that the DRO does not meet the requirements of a QDRO, the beneficiary or alternate payee may appeal the plan administrator's decision to a "court of competent jurisdiction" under 29 U.S.C. § 1056(d)(3)(H)(i).

29 U.S.C. § 1132(a) creates two relevant causes of action, one which has exclusive federal jurisdiction and one which has concurrent jurisdiction. Section 1132(a)(1)(B) provides that:

> [a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan * * *.

And, section 1132(e)(1) grants *concurrent* jurisdiction to state and federal courts to decide matters brought under this provision.

Alternatively, a litigant may bring an action under 29 U.S.C. § 1132(a)(3).

> A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan.

Federal district courts have *exclusive* jurisdiction of actions brought under this section. *See* 29 U.S.C. § 1132(e)(1).

 The issue before the court concerns the application of these provisions in light of plaintiffs' motion to remand. In opposing a motion to remand, the defendant carries the burden of establishing that removal was proper. *See Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.,* 992 F.2d 932, 934 (9th Cir.1993). The removal statute is strictly construed against removal jurisdiction. *See Gaus v. Miles,* 980 F.2d 564, 566 (9th Cir.1992). In areas of law that are traditionally fields of state regulation, claims are addressed

"with the starting presumption that Congress did not intend to supplant state law." *New York Conf. of Blue Cross v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

> Where federal jurisdiction is premised on the existence of a federal question, removal is proper only (1) where a federal question appears on the face of the plaintiff's well-pleaded complaint or (2) where federal law so completely preempts the plaintiff's state law cause of action that the complaint necessarily arises under federal law.

*Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 961 (9th Cir.1998) (citations omitted). The validity of a removal is normally analyzed under this two-pronged test. In this instance, the questions raised by both prongs merge into a single question: whether the Nascas' joinder of PeopleSoft can properly be characterized as falling under ERISA's civil enforcement provisions.

## II

Part one of the test is referred to as the "well pleaded complaint rule." Under this standard, federal courts have jurisdiction to hear, "originally or by removal, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

Plaintiffs join defendant in this action under *state* law in accordance with Cal. Fam.Code § 2337(6)(A), which requires that "[prior to the entry of judgment] the party's retirement or pension plan shall be joined as a party to the proceeding for dissolution." Defendant argues, however, that the joinder is actually an ERISA claim covered by 29 U.S.C. § 1132(a), and that "there is no such thing as an ERISA claim (artfully pled or otherwise) over which the federal courts lack jurisdiction." Def. Supp. Mem. at 7. Defendant cites the

Supreme Court's decision in *Metropolitan Life v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), for the proposition that "Congress has clearly manifested an intent to make causes of action within the scope of [29 U.S.C. § 1132(a)] removable to federal court." To decide whether plaintiff's case warrants removal under the well-pleaded complaint rule, then, the court must determine whether it may be fairly characterized as an action pursued under section 1132(a).

Under the second, alternative prong of the test, the court must consider whether federal law completely preempts plaintiffs' cause of action. Preemption is not sufficient to justify removal—*complete* preemption is required.

> The difference between preemption and complete preemption is important. When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under section [1144(a)], the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand the issue to state court where the preemption issue can be addressed and resolved.

*Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 354 (3d Cir.1995). *See also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)("The fact that an employer * * * might ultimately prove that an employee's claims are pre-empted does not establish that they are removable."); *Metropolitan Life*, 481 U.S. at 64, 107 S.Ct. 1542 ("ERISA preemption, without more, does not convert a state claim into an action arising under federal law."); *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir.1995)("removal and preemption are two distinct concepts").

While section 1144(a) remains a preemptive umbrella which mandates that ERISA provisions "shall supersede any and all state laws insofar as they may now or hereafter relate to any [ERISA] employee

benefit plan," the *complete* ERISA preemption requisite for removal to federal court exists only for civil actions brought pursuant to section 1132(a). *See Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355, 1358 (9th Cir. 1997)("state law claims are preempted by ERISA only if they fall within the scope of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)"); *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 934 (9th Cir.1994)(where plaintiff's claims "are not within the scope of section 1132(a) [they are] not completely preempted."); *Dukes*, 57 F.3d at 355 ("State law claims which fall outside the scope of section [1132(a)] are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete preemption principles established in *Metropolitan Life*."); *Allstate Ins. Co. v. 65 Security Plan*, 879 F.2d 90, 93–94 (3rd Cir.1989) (holding that section 1144 preemption will not justify removal unless the claim falls within the scope of section 1132(a)); *Levy*, 1999 WL 66511 at *3 ("Claims falling outside the scope of § 1132(a), even if preempted by § 1144(a), do not provide a basis for federal jurisdiction.").

The complete preemption requisite to warrant removal under the second prong of the test, therefore, requires the same finding as that under the first prong: that plaintiff's joinder is a section 1132(a) action in disguise. Consequently, the court's removal jurisdiction is entirely dependent on this finding.

In the past, the Supreme Court read ERISA provisions broadly and recognized ERISA legislation as being endowed with potent preemptive force. *See Metropolitan Life*, 481 U.S. at 62, 107 S.Ct. 1542. Recently, however, the Court has narrowed its view of ERISA preemption. *See Toumajian v. Frailey*, 135 F.3d 648, 654 n.3 (9th Cir.1998)("Recently the scope of this broad 'relate to' preemption was markedly narrowed")(referring to *Blue Cross v. Travelers, supra); Blue Cross v. Levy*, 1999 WL 66511, *6 (N.D.Cal.1999) ("Both *Bast* and *Geweke* suggest that the reach of ERISA preemption is not as broad as the Court's order in *Mullens* might suggest, and that the appropriate focus is the intent of Congress to regulate ERISA-protected relationships").

In *Blue Cross v. Travelers*, 514 U.S. at 655, 115 S.Ct. 1671, the Court held that courts should consider the Congressional objectives of ERISA as a guide to the breadth of state law that Congress intended to preempt. The Court has also directed the courts to look "to the nature of the effect of the state law on ERISA plans." *California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc.*, 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997).

As noted above, Congress enacted ERISA to provide workers with a federal means of enforcing their rights to benefits against pension plans. In *Metropolitan Life*, the Court recognized that this was reflected in ERISA's legislative history:

> Senator Williams, a sponsor of ERISA, emphasized that the civil enforcement section would enable participants and beneficiaries to bring suit to recover benefits denied contrary to the terms of the plan and that when they did so it is intended that such actions will be regarded as arising under the laws of the United States.

*Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. 1542.

Moreover, Congress intended the anti-alienation provisions to protect workers against their plans, not against other individuals with claims to the benefits under state property law.

> In enacting ERISA, Congress intended to safeguard the rights of plan participants and beneficiaries as against employers, insurers, and administrators of employee benefit plans. ERISA therefore preempts state laws that concern these matters. But we see no indication that Congress intended to safeguard an individual beneficiary's rights as against another person claiming superior rights, under state law, to those proceeds. Ab-

sent specific contrary provisions in ERISA, an action intended to enforce such individual rights against a beneficiary does not fall within the scope of § 1132(a), and state laws on which such an action relies are not barred by ERISA preemption.

*Emard*, 153 F.3d at 957. *See also General American Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir.1993)("The key to distinguishing between what ERISA preempts and what it does not lies * * * in recognizing that the statute comprehensively regulates certain relationships: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee * * *, and between plan and trustee.").

The Ninth Circuit recently considered these goals when it redefined its view of ERISA in *Emard*. Following the Supreme Court's lead, the Ninth Circuit adopted a decidedly narrower view of ERISA and ERISA preemption. *See Emard*, 153 F.3d at 961 ("ERISA's preemption clause no longer has the power to transmute into a federal question every issue that brushes against the periphery of an ERISA plan. We must identify instead Congress' purposes in enacting ERISA to determine in what fields state law is preempted."). As part of its new interpretation of ERISA, the Ninth Circuit carefully defined the boundaries of section 1132 by distinguishing between actions where the existence or calculation of ERISA benefits are in dispute, and those that address the ownership of benefits whose nature or quantity are not themselves at issue. Actions of the latter kind are brought pursuant to state property laws and do not fall under section 1132.

> An action falls within the scope of [section 1132(a)] only where the plaintiff seeks to recover benefits due to him under the terms of his plan. Emard's claims do not implicate the terms of the plan. There is no dispute regarding the amount or nature of the benefit or whether the benefit is properly payable. This dispute concerns only the ultimate ownership of the proceeds. That dis-

pute can be decided without reference to the terms of the plan or the provisions of ERISA.

*Emard*, 153 F.3d at 957. This distinction is consistent with Congress's intent because it provides a federal cause of action enabling workers to enforce their rights vis a vis their pension plans without requiring federal courts to venture into the state-controlled domains of property and family law. *See Mackey v. Lanier Collection Agency & Serv. Inc.*, 486 U.S. 825, 833, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (ERISA does not preempt "run-of-the-mill state law claims" even when the suits affect and involve the plan); *Shaw v. Delta Air Lines*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (no preemption of state law claims that affect employee benefit plans in "too tenuous, remote, or peripheral a manner"); *Emard*, 153 F.3d at 960 ("A state's community property law can regulate ERISA relationships by changing the identity of an ERISA beneficiary.")

The Third Circuit has limited section 1132 along similar lines. In *Dukes*, the plaintiff sued an ERISA-regulated plan for medical negligence, asserting that the plan's failure to provide necessary medical care resulted in plaintiff's death. The defendant plan attempted to remove the action to federal court, claiming ERISA preemption. The court found that plaintiff's cause of action did not fall under section 1132(a) despite the fact that the plan was regulated by ERISA.

> The plaintiffs are not attempting to define new "rights under the terms of the plan"; instead they are attempting to assert their already existing rights under the generally applicable state law of agency and tort. Inherent in the phrases "rights under the terms of the plan" and "benefits due under the terms of the plan" is the notion that the plan beneficiaries will receive something to which they would not otherwise be entitled.

*Dukes*, 57 F.3d at 358

In addition, there is authority for the proposition that ERISA preemption does

not prevent a state court order from mandating payment by an ERISA-regulated pension plan to a non-beneficiary. *See Mackey,* 486 U.S. at 837, 108 S.Ct. 2182 (while "state-law contract or tort claims are relatively commonplace, ERISA does not provide an enforcement mechanism for collecting judgments won in either type of action. In lieu of such a provision, state-law collection methods, including garnishment, remain undisturbed by ERISA."); *American Telephone and Telegraph Co. v. Merry,* 592 F.2d 118, 121 (2d Cir.1979) (state garnishment of a spouse's pension income to enforce alimony and support orders is not pre-empted). *Ablamis v. Roper,* 937 F.2d 1450, 1455 (9th Cir.1991) ("REA provides expressly that * * * state courts may issue a QDRO on behalf of an alternate payee and may afford marital property rights to such a payee"); *Board of Trustees of Laborers Pension Trust Fund v. Levingston,* 816 F.Supp. 1496 (N.D.Cal.1993) (state court may order a ERISA-regulated plan to direct payment to an alternate payee via a QDRO).

The common theme in cases that courts have declined to find subject to complete ERISA preemption is that they involve disputes as to the ultimate ownership of ERISA benefits, not their quality, nature or existence. This court recently recognized this theme in *The Manufacturers Life Insurance Co. v. East Bay Restaurant and Tavern Retirement Plan,* 57 F.Supp.2d 921, 924 (N.D.Cal.), when it noted that there is no preemption in garnishment cases if "the amount of plan assets is unaffected by whether the money is distributed to the beneficiary or the beneficiary's creditor." Such cases are distinguishable from matters which courts recognize as exercises of ERISA's civil enforcement provisions, where beneficiaries sue their plans to recover benefits which the plan has denied. *See, e.g., Metropolitan Life,* 481 U.S. at 63, 107 S.Ct. 1542 (state common-law causes of action asserting improper processing of a claim for benefits was removable to federal court); *Sofo v. Pan–American Life Insurance Co.,* 13 F.3d 239, 240–41 (7th Cir.1994) (plaintiff's state

court claim against insurance company for wrongful denial of benefits removable); *Lister v. Stark,* 890 F.2d 941, 943 (7th Cir.1989) (plaintiff's state law claim challenging the calculation of his time of uninterrupted service for the purposes of calculating pension benefits was removable).

No federal court has considered the question whether the joining of an ERISA plan to a state divorce proceeding falls within section 1132(a) in light of *Emard.* The language of section 1132(a), on its face, would appear to encompass any action seeking to secure benefits governed by ERISA. Magistrate Judge Larson, in reviewing this matter before the *Emard* decision, found the joinder to constitute a section 1132(a)(1)(B) action. The current landscape of ERISA preemption, however, is markedly different from that surveyed by Magistrate Judge Larson. As noted above, current analysis imposes a narrower view of ERISA preemption focusing on the objectives of Congress in enacting ERISA. *See, e.g., Estate of Egelhoff v. Egelhoff,* 93 Wash.App. 314, 968 P.2d 924, 930 (1998) ("The Supreme Court's recent cases indicate that ERISA preemption has been much too broadly construed in the past and must be narrowed; *Emard* follows that directive in a principled, logical manner. Although *Emard* addresses only life insurance, the same principle should apply to pension fund benefits"). And, while section 1132(a) may facially encompass the joinder action, this action does not implicate the goals or concerns embodied in ERISA.

■ Here, as in *Emard,* there is no dispute about the amount or nature of the benefits due under the plan; the state court is asked only to decide which party will receive the benefits upon payment. Joinder of the plan is merely "a precursor to the state court issuing a domestic relations order," whereby the state court will allocate the pension benefits according to state property and family law. Def's Supp. Brief at 5. Defendant does not, and cannot, point to any question of ERISA

law raised by this allocation. If the state court orders defendant to pay benefits to plaintiffs in a manner that defendant believes to be inconsistent with federal law, i.e., if the DRO is not a QDRO, defendant may then have a valid claim that the state order is in conflict with federal law and that controversy may be removable under conflict preemption. *See* 29 U.S.C. § 1132(e). Until such a conflict is apparent, however, there is no question of ERISA interpretation and no basis for removal.

Moreover, policy concerns, fairness, and Congress' intent in enacting the REA compel this conclusion. When it enacted the REA, "Congress sought to protect the rights of nonemployee spouses and dependents by allowing state courts to make equitable divisions of property in a divorce or dissolution." *Oddino,* 16 Cal.4th at 75, 65 Cal.Rptr.2d 566, 939 P.2d 1266; *see also* H.R.Rep. No. 655, 98th Congress 2d Sess. p. 25 (REA's primary goals include providing "adequate safeguards for spouses not employed outside the home."). An interpretation of ERISA supporting removal to federal court would frustrate this purpose by needlessly complicating the process by which a nonemployee spouse may obtain pension benefits. *See Oddino,* 16 Cal.4th at 76, 65 Cal.Rptr.2d 566, 939 P.2d 1266 *quoting In re Marriage of Levingston,* 12 Cal.App.4th 1303, 1306, 16 Cal.Rptr.2d 100 (1993) (removal to federal court "would cause undue hardship, expense and delay to the affected party, and impose an unnecessary workload on already overburdened federal courts."). Allowing removal pursuant to a finding of ERISA preemption or concurrent jurisdiction would therefore be contrary to Congress's intent in passing the REA.

A finding of exclusive jurisdiction would force California citizens to delay their state family court actions pending federal court consideration of any award of ERISA benefits to an alternate beneficiary. Likewise, a finding of concurrent jurisdiction would require federal courts to adjudicate the merits of abstention on a case by case basis. ERISA was not intended to saddle federal courts with a Hobson's choice between holding state court litigants hostage in a parallel proceeding and requiring federal courts to perform the functions of state family courts through an exercise of supplemental jurisdiction. Such a regime would impose an undue burden on state court litigants and would draw federal courts into innumerable state court proceedings which do not implicate the concerns of ERISA in any way.

Nonetheless, defendant cites the California Supreme Court's decision in *In re Marriage of Oddino,* 16 Cal.4th 67, 65 Cal.Rptr.2d 566, 939 P.2d 1266 (1997), for the proposition that mere joinder of an ERISA plan to a divorce proceeding constitutes a claim for benefits under 29 U.S.C. § 1132(a)(1)(b). *See* Defendant's appellate brief at p. 22. In the *Oddino* divorce proceeding, the plaintiff sought recalculation of the benefits due under her former husband's pension plan pursuant to an existing QDRO. Such an action differs from the present case in two fundamental ways.

First, the *Oddino* action involved a dispute between a plan administrator and a beneficiary as to the *amount* of the benefits due under the plan. The plaintiff contended that the plan had erroneously applied an actuarial reduction of her husband's benefits. As explained above, disputes as to the proper calculation of ERISA benefits, like disputes as to the existence of ERISA benefits, directly implicate ERISA's concerns and, therefore, constitute actions under section 1132(a).

Second, *Oddino* differs from the present matter in that the plaintiff sought to enforce a QDRO rather than to obtain a DRO. The plaintiff sought to enforce a state court qualification of a DRO despite the ERISA plan administrator's claim that the state court's qualification of the DRO violated ERISA. Such a dispute, unlike the present action, requires an interpretation of ERISA and, therefore, squarely implicates ERISA's preemption provisions. Accordingly, the *Oddino* court found the enforcement of the QDRO, as opposed to

the joinder, to be an action pursuant to section 1132(a)(1)(b). Defense counsel appears to have conceded as much at the hearing before Magistrate Judge Larson. *See* Hrg. Tr., Jan. 28, 1998, at 4 ("Until you get someone making an initial determination that an order is a QDRO, neither *Levingston* nor *Oddino* really come into play.").

In fact, the *Oddino* court specifically noted that the REA did not create a cause of action for a spouse like Mrs Nasca, who does not yet have a QDRO:

> The QDRO provisions added to ERISA by REA do not independently provide former spouses or dependents with rights to any retirement benefits. Rather, they constitute only an exception to the general anti-alienation rule of section 1056(d)(1), allowing plan administrators to make payments, under specified circumstances, to alternate payees if ordered to do so by a state court.

*Oddino,* 16 Cal.4th at 77, 65 Cal.Rptr.2d 566, 939 P.2d 1266. As the *Oddino* decision suggests, the REA did not create a new federal cause of action. Rather, the REA carved out an exception to the anti-alienation provisions that previously stood in the way of state family law actions which sought to direct benefits to a former spouse or other alternate payee. The fact that Congress removed this barrier does not transform the underlying property dispute into a federal question. Plaintiffs' motion to remand must, therefore, be GRANTED.

Plaintiffs move for attorney fees associated with the removal. 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require a payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." The court "retains jurisdiction [to award attorney fees] even after being divested of jurisdiction on the merits." *See Moore v. Permanente,* 981 F.2d 443, 445 (9th Cir.1992). "Congress has unambiguously left the award of fees to the discretion of the district court." *Id.* at 445. The courts have not established

precise criteria by which to make this determination, but at least one court of appeals has approved of "a test of overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." *Morgan Guaranty Trust Co. v. Republic of Palau,* 971 F.2d 917, 924 (2d Cir.1992).

■ The Nascas filed for divorce nearly five years ago. Since that time, they have navigated a judicial obstacle course in which they had nothing to gain and that has not afforded them a determination in their marriage dissolution. In its review of this matter, the Ninth Circuit noted that "we are sensitive to the hardship that this ruling will inflict upon the Nascas, who, through no fault of their own, have had their divorce proceeding held hostage in federal court." *Nasca,* 160 F.3d at 580 n. 2. By contrast, PeopleSoft, as an administrator of ERISA plans, stood to gain on a scale much larger than this case by establishing ERISA preemption in this arena. The court therefore finds that PeopleSoft should bear the expense of the removal.

Section 1447(c) authorizes the court to order payment of actual costs, rather than costs which the court determines to be reasonable. Ann Riley, attorney for plaintiff Peter Nasca, submits an affidavit detailing attorney fees and costs billed to Mr Nasca in conjunction with the removal are $60,514.01. *See* Decl. of Ann Riley at 2. Karen Johnson, attorney for plaintiff Denise Nasca, submits an affidavit detailing costs billed to Mrs Nasca total $5,396.25. *See* Decl. of Karen Johnson, exh. A. PeopleSoft does not dispute these totals. The court therefore orders defendant to pay attorney fees and costs in the amount of $60,514.01 to plaintiff Peter Nasca and attorney fees of $5,396.25 to plaintiff Denise Nasca.

For the reasons stated above, plaintiff's motion to remand (Doc. 8) is GRANTED, and defendant's motion for dismissal (Doc. 3) is DENIED. The clerk shall enter

judgment in accordance with this order with attorney fees and costs to plaintiffs.

IT IS SO ORDERED.