**Charles REYHER, Plaintiff,**

v.

**TRUST ANNUITY PLAN FOR PILOTS OF TRANS WORLD AIRLINES, INC. c/o Trans World Airlines, Inc., Administrator, Defendants.**

**Nos. 93–396–Civ–T–17, 94–918–Civ–T–17E.**

United States District Court,
M.D. Florida,
Tampa Division.

July 10, 1995.

William D. Mitchell, Mitchell & Bline, P.A., Tampa, FL, for Charles R. Reyher.

Sharyn Beth Zuch, Joseph W. Clark, Shackleford, Farrior, Stallings & Evans, P.A., Tampa, FL, for Trust Annuity Plan for Pilots of Trans World Airlines, Inc. and Trans World Airlines.

### ORDER ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant Trust Annuity Plan for Pilots of Trans World Airlines, Inc.'s Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P. (Docket No. 64) Plaintiff has filed a Response in opposition to Defendant's Motion to Dismiss. (Docket No. 80) Upon consideration, the Court concludes that the relief which Plaintiff Reyher requests is considered most properly by the state court entering the original divorce decree addressing the distribution of marital property rights between Reyher and his former spouse. This Court declines jurisdiction over the Plaintiff's claims as he has stated them, on principles of comity, deferring to the state court's continuing jurisdiction over a cause of action which is founded in domestic relations law.

The cause of action in these consolidated cases is a request for clarification of Plaintiff's rights to payment under a pension plan and it is asserted that they arise under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.* However, the relief Plaintiff requests is best determined by the state court which explicitly reserved jurisdiction in the Plaintiff's divorce decree, a Qualified Domestic Relations Order (QDRO), for further determination and clarification of Plaintiff's rights. Paragraphs 9 and 14 of the Amended Final Judgement Regarding Retirement Benefits (Defendants Exhibit "A" to the Motion to Dismiss for Lack of Subject Matter Jurisdiction) state, respectively:

9. This Order shall remain in effect for the duration of the life of the Former Wife.

14. This Court reserves jurisdiction for the implementation and clarification of all portions of this Judgement as well as any portion of the Amended Final Judgement for Dissolution of Marriage entered in the above styled case to which this Order is an Amendment.

The state court, in Paragraph 2 of the Amended Final Judgement, states that the Order is intended to be a QDRO. ERISA's statutory language excepts Qualified Domestic Relations Orders from ERISA's general preemption provision.

On April 19, 1988, TWA ascertained that the December 21, 1987 Order of the state court was a Qualified Domestic Relations Order ("QDRO"), Paragraph 14 of Answer, and, that Plaintiff Reyher's former wife was an "alternate payee". Pursuant to the terms of the divorce decree, and according to the original benefits structure of the pension plan, TWA began making monthly annuity payments to Reyher's former wife. When the terms of the plan changed to allow for a lump sum distribution to plan participants and alternate payees under QDROs, Reyher did not seek redefinition of his rights and interests under the converted plan from the state court issuing the QDRO.

ERISA contains a broad preemption provision declaring that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to employee benefit plans". 29 U.S.C. § 1144(a).

However, the preemption provision is limited by section 1056(d), which defines a Qualified Domestic Relations Order as a domestic relations order issued by a court, relating to the allocation of spousal property rights, which "creates or recognizes the existence of an alternate payee's right to ... receive all or a portion of the benefits payable" under a plan. Subsection (b)(7) explains that the preemption clause "shall not apply to qualified domestic relations orders (QDROs) (within the meaning of section 1056(d)(3)(B)(i) of this title)." Therefore, ERISA does not preempt causes of action pertaining to QDROs.

In *Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114 (10th Cir.1991), the court held that the statutory preemption exemption from ERISA included divorce decrees meeting the statutory requirements for a QDRO. To qualify under the statute, a court order must include: (1) the name of the participant and the name and mailing address of an alternate payee covered by the order, (2) the amount or percentage of benefits payable to an alternate payee or an manner of determining the amount or percentage, (3) the number of payments or period affected by the order, and (4) the plan to which the order applies. 29 U.S.C. § 1056(d)(3)(B)(i)(II), (d)(3)(D). Because the divorce decree issued by the state court contained all of the statutory requirements for a QDRO and none of the prohibitions, the order is not preempted by ERISA.

■ Furthermore, the Conference Report on ERISA describing the civil enforcement provisions of section 502(a) says:

> With respect to suits to enforce benefits rights under the plan or to recover benefits under the plan which do not involve application of title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction.

Other courts likewise have interpreted section 1056(d). In *Metropolitan Life Ins. Co. v. Person*, 805 F.Supp. 1411 (E.D.Mich.1992), the court held that a Qualified Domestic Relations Order is exempted from preemption under ERISA. The *Stackhouse* court ruled similarly: QDROs are not subject to ERISA preemption provisions and states can regulate QDROs. *Stackhouse v. Russell*, 447 N.W.2d 124 (Iowa 1989). Thus, while the states are prohibited by ERISA from regulating pension plans, the states are allowed to specify the allocation of plan benefits pursuant to a QDRO in the event of divorce.

Furthermore, in observance of comity, and with respect for the states' traditional jurisdiction over matters of domestic relations, this Court deems the issues in this case to arise from domestic relations law and, accordingly, defers to the jurisdiction of the state court.

The Supreme Court has made clear that matters of state family law traditionally lay outside the realm of federal review. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979). The Fifth Circuit Court of Appeals has asserted likewise that "federal respect for state domestic relations law has a long and venerable history". *Brandon v. Travelers Insurance Co.*, 18 F.3d 1321, 1326 (5th Cir.1994); *Warner v. Ford Motor Co.*, 46 F.3d. 531, (6th Cir.1995). Considerations of comity and federalism led to federal court abstention in *Eichelberger v. Eichelberger*, 584 F.Supp. 899 (D.C.Tex.1984), involving a Texas divorce decree giving a wife the right to direct her husband, as trustee and administrator of a pension plan, to invest wife's undivided one-half interest and to provide the wife with information and an accounting. The federal court held that the proper forum for the action was the state court.

Plaintiff Reyher requests equitable relief in language which invokes matters within the jurisdiction of the state court:

1.

(a) That Defendants make good to the Plaintiff any losses resulting to him as a result of any single sum payment that the Plan makes to Plaintiff's former wife.

(b) Enjoin Defendants from paying any single sum benefits to Plaintiff's former wife.

(c) Such other equitable or remedial relief as this Court deems appropriate;

2.

(a) That Defendant TWA be held personally liable to the Plaintiff ... for TWA's failure to furnish the material in accordance with ERISA ...;

3.

(a) That Defendants make good to the Plaintiff any losses resulting to him as a result of violating ERISA by unlawfully interfering with Plaintiff's rights under the Plan and Title I of ERISA;

4.

(a) That Defendant TWA make good to the Plaintiff any losses resulting to him as a result of TWA not discharging its fiduciary duties in accordance with the plan documents insofar as such documents are consistent with Title I or IV of ERISA.

(b) Such other equitable or remedial relief as this Court deems appropriate (remainder omitted)

Further, Reyher states in his responses to interrogatories propounded by TWA that the aim of this lawsuit is to prevent any distribution, other than monthly payments, to [his former wife] of the reserve set aside for Bassett during her life. Although Reyher attempts to frame his request for relief upon alleged violations of ERISA, the relief can and should be afforded by the state court which specifically reserved jurisdiction to review and modify the QDRO it originally issued. Reyher's complaint does not state definitively any federal ERISA claim. Reyher risks no deprivation of guarantees under ERISA should the state court redetermine the distribution of assets under the converted TWA plan. Therefore, as Reyher requests relief which ensues from the resolution of a marital property dispute, and, when construed as such, does not conflict with any of ERISA's substantive provisions, this Court declines jurisdiction. Accordingly, it is

**ORDERED** that Defendant Trans World Airline's Motion to Dismiss for Lack of Subject Matter Jurisdiction be **granted** (Docket No. 64), and the Clerk of the Court be directed to enter judgement for Defendant in these consolidated cases.

**DONE and ORDERED.**