Leslie L. JONES, Plaintiff,

v.

AMERICAN AIRLINES, INC.; American Airlines, Inc., Pilot Retirement Benefit Program; John Does Numbers 1 Through 10, individually and as members of the American Airlines, Inc., Pilot Retirement Benefit Program Pension Benefits Administration Committee, Defendants.

No. 99–CV–057–J.

United States District Court,
D. Wyoming.

July 26, 1999.

Brian J. Spano, Douglas Tumminello, Rothgerber Johnson & Lyons, Denver, CO, Andrea L. Richard, Brian J. Spano, Rothgerber Johnson & Lyons, Cheyenne, Yvonne W. Nagel, Brown Nagel Waters & Hiser, Laramie, WY, for Leslie L. Jones, plaintiffs.

Jenniffer J. Walt, George F. Cicotte, Karen Ford, Michael Salamon, Littler Mendelson, Denver, CO, for American Airlines Inc., American Airlines Inc. Pilot Retirement Benefit Program, defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

ALAN B. JOHNSON, Chief Judge.

This matter is before the court on defendants' Motion to Dismiss. Plaintiff brings this case under ERISA and contends that his pension plan is misconstruing or misapplying an amended qualified domestic relations order (QDRO) entered by a Texas divorce court with the result that he is being denied benefits awarded him in his divorce. Plaintiff brings claims to recover the benefits, to recover for alleged breach of fiduciary duty and to enjoin the Plan from paying benefits to his former wife until this case is resolved. Defendants move to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), for lack of jurisdiction under Fed.R.Civ.P. 12(b)(1) and for the failure to join an indispensable party under Fed.R.Civ.P. 12(b)(7).

The standard for considering a Rule 12(b)(6) motion is well known:

[A]ll well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997) "A 12(b)(6) motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v.*

*Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

*Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226 (10th Cir.1999).

■ Written documents that are attached to the complaint as an exhibit are considered part of the complaint and may therefore be considered in connection with a motion to dismiss under Rule 12(b). *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991) (citing Fed.R.Civ.P. 10).

■ Although a motion to dismiss for failure to state a claim is brought under Fed.R.Civ.P. 12(b)(6), a motion to dismiss for lack of subject matter jurisdiction is brought only under Fed.R.Civ.P. 12(b)(1). *State Farm Mutual Automobile Ins. Co. v. Dyer*, 19 F.3d 514, 518 n. 8 (10th Cir.1994). A dismissal for lack of subject matter jurisdiction is not on the merits and its res judicata effect is limited to the question of jurisdiction. *Id.*

A dismissal under Rule 12(b)(7) is for the "failure to join a party under Rule 19." The Tenth Circuit has explained the application of Rule 19(b) as follows:

Rule 19(b) sets forth the following factors for determining whether an entity or individual is indispensable:

first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Because Rule 19(b) does not state the weight to be given each factor, the district court in its discretion must determine the importance of each in the context of the particular case. *Glenny*, 494 F.2d at 653.

*Thunder Basin Coal Co. v. Southwestern Public Service Co.*, 104 F.3d 1205, 1211 (10th Cir.1997) (citing *Glenny v. American Metal Climax, Inc.*, 494 F.2d 651, 653 (10th Cir.1974)).

The following facts are averred in the Complaint or appear from the exhibits attached to the Complaint. Plaintiff worked for American Airlines from August 1, 1966, through his retirement on August 31, 1998. During all of the years he worked for American Airlines plaintiff was a plan participant in its employee benefit plan, defendant American Airlines, Inc., Pilot Retirement Plan (the Plan). Defendant American Airlines is the Plan administrator. Benefits under the Plan are provided through two components: a fixed income or defined benefit plan (Plan A Benefit) and, (2) a variable income or defined contribution plan (Plan B benefit). .

Plaintiff was married to non-party Sharon E. Jones from May 20, 1989, through December 20, 1995, approximately 6.58 years. On May 20, 1996, the District Court for Tarrant County, Texas entered a Final Decree of Divorce in the Joneses' divorce proceeding. Complaint Ex. B. In that Divorce Decree Judge James K. Walker divided the Plan by awarding the following to plaintiff:

5. One half of all contributions by Petitioner [plaintiff] or his employer American Airlines to [plaintiff's] Defined Benefit Plan and his Defined Contribution Plan and all increases in value attributable to that one-half from and including the date of the marriage, May 20, 1989, to the date of dissolution of the marriage, December 20, 1995.

6. All contributions by [plaintiff] or his employer American Airlines to [plaintiff's] Defined Benefit Plan and his Defined Contribution Plan including all increases attributable to them to the date of the marriage, May 20, 1989, and the same is set aside to [plaintiff] as his separate property.

Complaint Ex. B at 3.

Judge Walker awarded Sharon Jones the following interest in the Plan:

5. One half of all contributions by [plaintiff] or his employer American Airlines to [plaintiff's] Defined Benefit Plan and his Defined Contribution Plan and all increases in value attributable to that one-half from and including the date of the marriage, May 20, 1989, to the date of the dissolution of the marriage, December 20, 1995.

*Id.* Ex. B at 5.

Also on May 20, 1996, Judge Walker entered a Qualified Domestic Relations Order providing as follows:

As part of a just and right division of the estate of the parties, Sharon E. Jones is awarded a portion of any benefits payable with respect to Leslie L. Jones that his designated beneficiary, surviving spouse, or estate may become entitled to receive from the plan, by way of a return of accumulated contributions or by way of any annuity that may become payable as a result of Leslie L. Jones' participation in the Plan.

The portion of the distribution of benefits or total accumulated contributions that is awarded and that is to be paid to Sharon E. Jones as alternate payee shall be fifty percent of the contributions made and the *total accumulated value* attributable to them in the Plan for the period beginning with the date of marriage, which is May 20, 1989, and ending with the date of divorce, which is December 20, 1995.

*Id.* Ex. C at 2 (underlined emphasis added).

On January 15, 1997, the Plan administrator wrote to Judge Walker that the May 20, 1996, QDRO did not qualify as a QDRO under the Retirement Equality Act

of 1984(REA).[1] Judge Walker then entered an Amended Qualified Domestic Relations Order (Amended QDRO) on February 28, 1997. The Amended QDRO contained the same language quoted above. However, it added the following to the above-quoted paragraph dividing the interest in the Plan: "The benefits accrued under the Plans from the Date of Marriage to the Date of Divorce are community property and are subject to the community property laws of the State of Texas." *Id.* Ex. E at 2.

The QDRO and the Amended QDRO contained the following provisions:

*CONSTRUCTIVE TRUSTEE.* It is ordered the Participant [Leslie L. Jones] is designated as constructive trustee of any benefits assigned to Alternate Payee [Shirley Jones] under this Order which may be paid to or received by Participant. Participant, as trustee shall immediately pay or transmit within 10 days after receipt of any such benefits to Alternate Payee, at Alternate Payee's last known address.

*JURISDICTION.* The Court expressly reserves jurisdiction to supervise, interpret and enforce the division and distribution of the benefits awarded under this Order.

*Id.* Ex. C at 3–4 and Ex. D at 3–4.

The Amended QDRO also provided:

IT IS FURTHER ORDERED that the plans shall comply with this order on or before 10:00 a.m. March 26, 1997, and the Plan Administrator shall certify to the Court in writing of compliance with this order by said date and time. Absent compliance by said date and time the Court on its own motion or the motion of any party will join the Plans, the Plan Administrator of American Air Lines, Laura K. Dewbre [a Legal Administrator for the Plan] and such other parties as the Court determines necessary for the purpose of conducting a Clarification Hearing on this Order.

*Id.* Ex. D at 4.

On February 28, 1997, Judge Walker sent a copy of the Amended QDRO to the Plan with a cover letter to Ms. Dewbre of the Plan's Legal Administrator Benefits Compliance Department directing her attention to the compliance deadline. *Id.* at Ex. F. On March 27, 1997, a day *after* Judge Walker's deadline, Ms. Dewbre responded by acknowledging receipt of the Amended QDRO. She advised that such orders were reviewed on a "first come first served basis" and instructed Judge Walker and the Joneses not to contact the Plan Administrator about the matter because it would not expedite the process. *Id.* Ex. F.

On April 21, 1997, Judge Walker held a Clarification Hearing. The following two orders resulted from that hearing: "Court's Order on Clarification Hearing"; and, "Court's Findings of Fact and Conclusions of Law on Clarification Hearing." Pursuant to those orders Judge Walker found that the QDRO and the Amended QDRO were "qualified domestic relations orders" within the meaning of 29 U.S.C. § 1056 and ordered that the Plan Administrator "shall immediately comply" with the QDROs. On April 28, 1997, the Plan Administrator responded that it had reviewed the Amended QDRO and found it satisfied the requirements of the REA.

On April 29, 1997, Judge Walker held a hearing. The transcript of the hearing reveals Judge Walker's frustration and exasperation with the Plan Administrator's failure to comply with his order and transfer Sharon Jones' interest. *Id.* Ex. I. Judge Walker also outlined the attempts by Plan personnel to evade his subpoenas. *Id.* Judge Walker sent a bailiff with the Plan Administrator's personnel while they telephoned their office and accomplished compliance with his order. *Id.* at 9 and 14.

---

1. REA amended and is now part of ERISA. Among other things, REA permitted alienation of interests in ERISA plans pursuant to QDRO's.

Plaintiff alleges that he was not notified of the April 29, 1997, hearing and learned about it later. On September 10, 1997, plaintiff wrote the Plan Administrator that he objected to the Plan's interpretation of the Amended QDRO because it deprived him of a large portion of his B Plan benefits. The September 10, 1997, letter references plaintiff's attempt to correct this "problem" as early as June 5, 1997. *Id.*

Plaintiff subsequently filed a written claim with the Plan protesting what he asserts to be an incorrect and inappropriate division of the benefits. On March 27, 1998, the Plan Administrator denied that claim. Complaint Ex. G. Plaintiff contends that the March 27, 1998, denial failed to comply with 29 U.S.C. § 1133 and the terms of the Plan because it failed to set forth the following: the specific reasons for the denial; a statement that the denial would be final if plaintiff did not appeal; and a statement explaining the procedure for review of the denial.

On May 4, 1998, plaintiff obtained a summary notice of the Plan's proposed division of benefits. Plaintiff disputes the method by which the Plan proposed to divide the Plan B benefits. Plaintiff filed a formal appeal asserting that the Plan's proposed distribution of both Plan A and Plan B benefits was not in accordance with the terms and conditions of the Amended QDRO.

On March 28, 1999, plaintiff filed his Complaint under ERISA in this district, alleging that he is now a resident of Wyoming. He brings the following four claims under ERISA. One, a claim to recover benefits due him under the Plan's Plan A, pursuant to 29 U.S.C. § 1132(a)(1)(B) (first cause of action). Two, a claim to recover benefits due him under the Plan's Plan B, pursuant to 29 U.S.C. § 1132(a)(1)(B) (second cause of action). Three, a claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(2) (third cause of action). And, four, a claim for injunctive relief seeking to prohibit the Plan from distributing any Plan A or Plan B benefits to non-party Sharon Jones until this case is resolved (fourth cause of action). Plaintiff also seeks pre-judgment interest and expenses of litigation, including attorney fees. *See Gordon v. United States Steel Corp.,* 724 F.2d 106, 108–09 (10th Cir.1983) (granting of attorney's fees under ERISA, 29 U.S.C. § 1132(g)(1), not to be done as a matter of course and listing five nonexclusive factors from *Eaves v. Penn,* 587 F.2d 453 (10th Cir.1978), to guide district court's decision).

Defendants move to dismiss. Defendants contend this action is an impermissible collateral attack on the Texas court's Amended QDRO, that all claims pertaining to the Amended QDRO should be heard by the Texas court, that comity requires this federal court to decline this case because it involves a domestic relations matter, that the Texas court expressly reserved jurisdiction over the Amended QDRO, and that plaintiff failed to join Shirley Jones, an indispensable party.

Defendants contend that this court lacks jurisdiction over plaintiff's claims because the claims are a collateral attack upon a valid state court decision. Defendants contend that plaintiff is either seeking to modify the distribution of the benefits or is asserting that the Plan failed to properly follow the terms of the Texas order and is guilty of contempt of the Texas court. Defendants' confusion over the basis of plaintiff's claim is understandable because in his Complaint and in his Response plaintiff alleges that he did not have timely notice of the hearing and the Plan Administrator's acceptance of the Amended QDRO as a QDRO—allegations relevant only to a motion to set aside an order. He also alleges that the Amended QDRO fails to specify clearly the method of dividing Plan A benefits, and therefore is not "qualified" within the meaning of ERISA. *See* Complaint at ¶31 and (alleging no notice of Judge Walker's hearing) and Plaintiff's Response at 6 (same) and 2 n.2 (contending Amended QDRO is not qualified as to Plan B benefits).

Plaintiff's Opposition to the Motion to Dismiss clarifies that by this action he is not seeking to have the Amended QDRO declared void or set aside. He further clarifies that by this action he is contending two things. First, that the Plan failed to properly follow the terms of the Texas order. This position is stated in plaintiff's Opposition as follows:

> Defendants' decision to "split" the benefits resulted in an incorrect distribution to plaintiff under the terms of the QDRO and a denial of benefits under ERISA. . . .
>
> * * * * * *
>
> Plaintiff is seeking to hold Defendants liable for a denial of benefits under ERISA as a result of their failure to comply with the property division ordered by the Texas divorce court. . .
>
> * * * * * *
>
> Indeed Plaintiff *agrees* with the apportionment ordered by the Texas divorce court. Instead, Plaintiff asserts that the Defendants misapplied the QDRO when they divided and distributed the Plan A and B pension plans. . . .

Plaintiff's Response at 6, 8 and 14 (underlined emphasis in original).

Second, plaintiff is contending that as far as the Plan A benefits are concerned that the Amended QDRO is not "qualified" within the meaning of ERISA. Plaintiff's Opposition Brief at 15.

Thus, to the extent that plaintiff seeks to challenge the Plan's decision that the Amended QDRO is "qualified," plaintiff's claim in this lawsuit is a collateral attack on a state court judgment.

Pursuant to 28 U.S.C. § 1738 and the full faith and credit clause of the federal constitution, this court must give the same preclusive effect to the Amended QDRO and to the Order on the Clarification Hearing as would the courts in Texas. Plaintiff contends that under ERISA federal courts have exclusive jurisdiction to determine whether or not a domestic relations order

is "qualified" within the meaning of ERISA. Defendants contend that the state and federal courts have concurrent jurisdiction to make a decision on whether the order is qualified.

■ The court agrees with defendants and finds the decision by the California Supreme Court in *In re Marriage of Oddino*, 16 Cal.4th 67, 65 Cal.Rptr.2d 566, 939 P.2d 1266 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1302, 140 L.Ed.2d 468 (1998), to be persuasive authority. In *Oddino*, an ex-wife sought re-calculation of community share of ex-husbands's retirement benefits. The California Supreme Court held that there was concurrent state and federal court jurisdiction over the issue of whether a state court's order assigning retirement benefits to the non-employee spouse is a QDRO under ERISA. The California Supreme Court further held that the particular order in question was not "qualified."

> [Plaintiff] contends her request for relief against the Plan was in the nature of an action to recover benefits due her under the terms of the plan—specifically, benefits calculated pursuant to the plan's Rule of 75—and to clarify her right to such future benefits. It was therefore brought, [plaintiff] argues, under [29 U.S.C. § ] 1132(a)(1)(B), and thus was the subject of concurrent state-federal jurisdiction under section 1132(e)(1). [Plaintiff] relies on the only published decisions directly addressing this question, both of which arose out of the same disputed marital property order and both of which were decided in favor of concurrent state jurisdiction. *In re Marriage of Levingston*, (1993) 12 Cal. App.4th 1303, 16 Cal.Rptr.2d 100 (*Levingston I*); *Board of Tr. of Laborers Pension Tr. v. Levingston*, (N.D.Cal. 1993) 816 F.Supp. 1496 (*Levingston II*). On the other hand, the Plan, supported by DOL, maintains [plaintiff] is seeking to enforce a provision of ERISA, to wit, the section requiring a plan administrator to determine if an order is a QDRO;

her action therefore is brought pursuant to section 1132(a)(3) and is exclusively within the jurisdiction of the federal courts under section 1132(e)(1). The Plan does not cite any case authority directly supporting its position, but argues both *Levingston* decisions are contrary to the text and intent of ERISA.

\* \* \* \* \* \*

Under section 1056(d)(3)(G)(i), the plan administrator makes the initial determination whether a domestic relations order received by the Plan is QDRO. REA contemplates possible judicial review of that determination in "a court of competent jurisdiction," § 1056(d)(3)(H)(i), but does not specify the procedures for obtaining such review or the court or courts having jurisdiction.

In *Levingston II*, the federal district court agreed with the *Levingston I* court that the "state courts had jurisdiction to determine the disputed order in that case was a QDRO.... The plain meaning of [Section] 1132(e)(1) provides concurrent jurisdiction for all actions under that section, and nothing in § 1132(a)(1)(B) limits its scope to actions which do not require the application of title I provisions. By its own terms, § 1132(a)(1)(B) broadly covers any action to recover, enforce, or clarify benefits, without regard to which ERISA provisions must be applied during the action." (*Levingston II, supra,* 816 F.Supp. at pp. 1499–1500.)

We find the analysis in *Levingston II* persuasive. Despite the 1974 Conference Report, Congress did not in ERISA limit state court jurisdiction to actions in which the provisions of title I of ERISA have no application. Instead, Congress extended concurrent state jurisdiction to any action by a participant or beneficiary to obtain or clarify benefits under the terms of a plan. As we have already seen, an action to qualify a domestic relations order and obtain benefits pursuant to it is an action to obtain or clarify benefits claimed under the terms of a plan. While Congress clearly intended that actions to enforce rights created by ERISA's title I would be limited to federal courts, rights to benefits awarded in a QDRO are not derived from ERISA, but from state law and plan terms.

Mary does not seek to enforce any such ERISA title I provisions against the Plan; she seeks payment of benefits assertedly due her under the Plan and the superior court's division of marital property.

The Plan further argues exclusive federal jurisdiction is necessary to allow development of a consistent "federal common law of rights and obligations under ERISA-regulated plans" (*Pilot Life Ins. Co. v. Dedeaux,* (1987) 481 U.S. 41, 56 [107 S.Ct. 1549, 1558, 95 L.Ed.2d 39] ), as Congress intended. We disagree. "Congress's choice to vest jurisdiction over one class of ERISA civil actions in both the state and federal courts is in no way inconsistent with its intent to create a comprehensive scheme of federal common law in the area. State as well as federal courts may be expositors of federal law." (*Menhorn v. Firestone Tire & Rubber Co.,* (9th Cir. 1984) 738 F.2d 1496, 1500 n. 2.) Although Congress may have expected that state courts typically would resolve section 1132(a)(1)(B) actions through application of "general principles of contract law" (738 F.2d at p.1500, n. 2), the rule of federal exclusivity cannot be so broad as to exclude all state court participation in the development of ERISA law. Every action brought by a participant or beneficiary under section 1132(a)(1)(B), even if it purports to state causes of action under state law, is deemed to arise under, and to be governed solely by, federal law, *i.e.,* ERISA and its common law outgrowths (*Metropolitan Life Ins. Co. v. Taylor,* (1987) 481 U.S. 58, 62–66 [107 S.Ct. 1542, 1545–1548, 95 L.Ed.2d 55] ), yet Congress expressly permitted such

actions to be brought in state court. Finally, whatever inferences may be drawn from the 1974 legislative history, we agree with both *Levingston* courts that Congress, when it amended ERISA through REA in 1984, did not intend to strip state courts of the power to enforce QDRO's against plan administrators. (*See Levingston I, supra,* 12 Cal. App.4th at pp.1306–1307; *Levingston II, supra,* 816 F.Supp. at p. 1500.) ... REA, of course, confirmed that a state court's division of retirement benefits and assignment of such benefits to a former spouse or dependent was not preempted or precluded by ERISA. It seems highly unlikely Congress, acting to protect the rights of former spouses and dependents as adjudicated in state court, would, at the same time, have deprived them of their existing ability to obtain enforcement of those rights in state court and required them instead to initiate a separate lawsuit in federal court whenever a retirement plan disputed the qualified status of the state court order.

*Because federal courts cannot themselves issue or modify domestic relations orders (see, e.g., Hunter v. Ameritech,* (N.D.Ill.1991) 779 F.Supp. 419, 421; *Dickerson v. Dickerson* (E.D.Tenn.1992) 803 F.Supp. 127, 134), *separate litigation of the QDRO issue in federal court presents the potential for an expensive and time-consuming course of parallel litigation, including possible appeals, in the two court systems.* Few of the former spouses and dependents whose interests REA was intended to protect could afford such expense or delay in determination of their income. Indeed, as the principal House sponsor of REA explained, the legislation was intended to clarify the law in the hope of reducing the need for extended litigation, for "no one benefits when a participant's or beneficiary's rights or a plan's obligations are so unclear that costly and protracted litigation is the inevitable result of lack of statutory clarity." (Remarks of Rep.

Clay, Debate on H.R. 4280, 98th Cong., 2d Sess. (1984)) In the absence of explicit direction in the law, we will not presume Congress intended to deprive alternate payees of their remedy in state court.

\* \* \* \* \* \*

For the reasons given, we conclude state courts have subject matter jurisdiction, concurrent with that of the federal courts, over whether a domestic relations order is a QDRO as defined in ERISA, section 1056(d)(3)(B).

*Oddino,* 939 P.2d at 1273 –1275.

The court finds the *Oddino/Levingston* rationale to be persuasive and adopts their reasoning finding concurrent state and federal court subject matter jurisdiction to determine whether a domestic relations order is "qualified" within the meaning of ERISA.

■ Because the state court expressly found that the Amended QDRO is "qualified" for ERISA purposes, this court must give full faith and credit to that Order. The case cited by plaintiff, *Hawkins v. Commissioner of Internal Revenue,* 86 F.3d 982 (10th Cir.1996) supports this position. *Hawkins* involved the issue of whether a divorce decree requiring a large payment from husband's pension plan to wife was a QDRO and therefore shifted income tax liability to wife. Thus, *Hawkins* involved the federal income tax consequences of a settlement and divorce decree; not the enforcement of a decree. Similarly, *Hawkins* did not involve a claim for benefits based upon a QDRO. In *Hawkins,* the state court had previously denied the husband plaintiff's motion to enter a nunc pro tunc order finding the parties' Marital Settlement Agreement and Decree of Divorce to be a QDRO. The state court found that nothing in the parties' Settlement Agreement specified that a QDRO was intended by the parties and that because it had not retained any jurisdiction over the Agreement, it had no jurisdiction to enter a QDRO nunc pro tunc to the date

of the original divorce. Thus, because the state court in *Hawkins* did not make a determination on whether the order was qualified, the subsequent Tenth Circuit opinion did not involve the issue of whether the state court had jurisdiction to make such a determination. The Tenth Circuit explained the issues before it as follows:

> Glenna first contends that [plaintiff] Arthur is precluded from arguing that the Agreement is a QDRO because the New Mexico divorce court considered and rejected this same argument in 1989. Under the Full Faith and Credit statute, federal courts are required to give a state court judgment the same preclusive effect as the state rendering the judgment would have given. 28 U.S.C. § 1738; *Franklin v. Thompson*, 981 F.2d 1168, 1170 (10th Cir.1992). We must therefore determine whether the issue preclusion principles followed by New Mexico courts would bar Arthur from relitigating the QDRO issue.
>
> \*　\*　\*　\*　\*　\*
>
> Here, the divorce court judgment does not preclude litigation of the QDRO issue in this case because the precise statutory question whether the Agreement was a QDRO was neither actually litigated nor necessarily decided in the divorce court proceeding. The divorce court decided only whether the Hawkins' Agreement was intended to be a QDRO; *it did not determine whether the Agreement itself satisfied the statutory definition of a QDRO.*
>
> The factual findings made by the divorce court in its August 2, 1989 order make clear that the court considered only whether Arthur and Glenda intended the Agreement to be a QDRO and, if not, whether the court possessed jurisdiction under its previous decree to enter a QDRO after the fact. Nowhere in its order did the divorce court discuss the specific statutory criteria for the creation of a QDRO. The court simply concluded that the parties did not contemplate the creation of a QDRO, and

that it lacked jurisdiction to modify the original Dissolution Decree which had incorporated the parties' Agreement. We agree with the Tax Court below that when a "statute allows parties to a marital settlement agreement to allocate the tax burdens between them by the use of particular language, the intentions of the parties are not controlling." Because the divorce court order did not address the legal effect of the incorporated Agreement under I.R.C. § 414(p)(1)-(3), it cannot operate to preclude Arthur from raising the QDRO issue in this proceeding.

*Hawkins*, 86 F.3d at 986–87 (underlined emphasis added).

Thus, far from finding that the issue of whether an order is a QDRO within the meaning of ERISA is a matter of exclusive federal jurisdiction, the Tenth Circuit in *Hawkins* assumes that the matter could have been decided by the state court, but found it was not. In this case the state divorce court did make a specific finding that the order was a QDRO when Judge Walker made a finding that the Amended QDRO satisfied the statutory definition of a QDRO. *See* Complaint Ex. G.

Another case cited by plaintiff, *Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114 (10th Cir.1991), is similarly inapposite. In *Carland*, the court found that a state law claim for benefits under an insurance policy was preempted by ERISA and therefore the court had removal jurisdiction. *Carland* did not involve a prior state court finding that a Divorce Decree awarding a former wife an interest in a pension was a QDRO. Thus, the federal trial court's finding in *Carland* that the Divorce Decree was a QDRO did not involve the issues before this court in this case.

█　Further, even if this court were not bound to afford full faith and credit to the state court's order holding the Amended QDRO was qualified within the meaning of ERISA, the Plan administrator's decision on the issue is subject to an abuse of

discretion review. *Matassarin v. Lynch,* 174 F.3d 549, 563 (5th Cir.1999) ("we allow a plan administrator discretion to determine whether an agreement constitutes a QDRO under the plan"). This court finds no abuse of discretion in the Plan administrator's decision that the Amended QDRO was qualified within the meaning of ERISA.

This court must afford Judge Walker's finding that the Amended QDRO is "qualified" for the purposes of ERISA the same preclusive effect as would the Texas courts. Under Texas law:

> If an appeal is not timely perfected from the divorce decree, res judicata bars a subsequent collateral attack. Res judicata applies even if the divorce decree improperly divided the property. *Cook v. Cameron,* 733 S.W.2d 137, 140 (Tex. 1987). "Errors other than lack of jurisdiction render the judgment merely voidable and must be attacked within the prescribed time limits." *Id.* (Citing *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985)). Accordingly, an apportionment of retirement benefits in a divorce decree, even if improper, is not subject to collateral attack and will be enforced. Also, if the decree is plain and unambiguous, this court is required to give effect to the literal meaning of its language. *Adams v. Adams,* 214 S.W.2d 856, 857 (Tex.Civ.App.—Waco 1948, *writ ref'd n.r.e.*).

*Baxter v. Ruddle,* 794 S.W.2d 761, 762 (Tex.1990).

■ Thus, under Texas law, plaintiff's contention that Judge Walker erred in determining that the Amended QDRO was "qualified" or improperly failed to specify a formula for dividing benefits should have been brought before the Texas state court as soon as plaintiff had notice of that court's decision. Because he did not do so, the order is a final judgment. Affording the same preclusive effect to the determination as would a Texas court, this court finds that the issue of whether the QDRO is "qualified" within the meaning of ERISA was the subject of a final order in plaintiff's divorce court and will not be reheard in this court.

Defendants next contend that all claims pertaining to the Texas QDRO should be heard by the Texas divorce court because (1) that court expressly reserved jurisdiction and (2) in the interest of comity this court should decline jurisdiction over a matter involving domestic relations.

As noted above, the Texas court expressly retained jurisdiction "to supervise, interpret and enforce the division and distribution of the benefits awarded under" its Amended QDRO. By statute, the courts of Texas retain such jurisdiction. *See* Tex. Family Code § 9.006(a) ("the court may render further orders to enforce the division of property made in the decree of divorce ... to assist in the implementation of or to clarify the prior order.") and (b) ("the court may *specify more precisely the manner of effecting the property division* previously made if the substantive division of property is not altered or changed") (underlined emphasis added); § 9.002 ("the court that rendered the decree of divorce ... retains the power to enforce the property division ..."). The Texas statutes also provide that the divorce court "may," on its own motions or request of a party, "render a clarifying order before a motion for contempt is made or heard, in conjunction with a motion for contempt or on denial of a motion for contempt." Tex. Family Code § 9.008(a). This section further provides "on a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt, the court may render a clarifying order setting forth specific terms to enforce compliance with the original division of property." *Id.* § 9.008(b).

Thus, the Texas court expressly retained jurisdiction over its Amended QDRO and has the statutory power to clarify that order if needed, or if it finds that the order is sufficiently clear, to enforce the order by contempt.

■ The court agrees with defendants that the realm of domestic relations is the exclusive province of the state courts. *See Reyher v. Trust Annuity Plan for Pilots of Trans. World Airlines, Inc.,* 891 F.Supp. 591 (M.D.Fla.1995) (declining jurisdiction because although plaintiff attempted to frame his request for relief upon alleged ERISA violations, the relief should be afforded by the state court which specifically reserved jurisdiction to review and modify the QDRO it originally issued). However, about the time this case was submitted for oral argument, the Fifth Circuit Court of Appeals heard an appeal of a similar case and found jurisdiction properly in the federal courts. *See Dial v. NFL Player Supplemental Disability,* 174 F.3d 606 (5th Cir.1999).

In *Dial,* the parties' original property settlement agreement and divorce decree had already been returned to the Texas divorce court for clarification on a benefits issue several years before with a resulting clarification order that was a QDRO. Mr. Dial's ERISA-qualified employer benefits plan construed the QDRO and the original settlement as entitling his former wife to 50% of his disability benefits. Mr. Dial objected and sued the benefits plan in federal court. He brought claims under ERISA for breach of fiduciary duty and a declaratory judgment that he was entitled to all of the disability benefits. Mr. Dial did not name his former wife as a party, so the benefits plan added her as third-party defendant. The benefits plan contended that the state divorce court would be the appropriate forum for resolution of Mr. Dial's dispute with his former wife over the original settlement agreement. The federal district court granted summary judgment for Mr. Dial. On appeal the Fifth Circuit reversed on the merits but found that the action construing the entitlement to benefits under the Dials' original property settlement agreement and the QDRO was properly before the federal district court.

The district court correctly characterized Dial's suit as an ERISA action. The Disability Plan contends that Dial should instead have brought a state-law claim against [his former wife] for clarification of the settlement agreement.

\* \* \* \* \* \*

The propriety of Dial's federal action rests upon whether it "relates to an[ ] employee benefit plan" under ERISA § 514(a). Courts read § 514(a)'s "relates to" provision very broadly. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). This Circuit stated in 1990 that cases preempting state-law claims with ERISA have at least two unifying characteristics: (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236, 245 (5th Cir.1990). In the instant case, Dial's claim concerns "traditional ERISA entities": himself (a Plan participant), [his former wife] (a potential Plan beneficiary), the Plan, and the NFL (administrator and employer). Dial seeks benefits that, in the absence of QDRO, he is due; paying him those benefits is among the Plan administrators' ERISA-governed responsibilities. Dial's suit was proper under ERISA. *Cf., e.g., Brandon v. Travelers Insurance Co.,* 18 F.3d 1321, 1325 (5th Cir. 1994) ("[T]he designation of a beneficiary 'relates to' the provision of an ERISA plan to a sufficient degree to be preempted by that statute."); *Carland v. Metropolitan Life Insurance Co.,* 935 F.2d 1114, 1121 (10th Cir.1991) (holding that an ex-wife's state claim to recover ERISA-qualified insurance benefits pursuant to a divorce decree amounted to an ERISA § 504 claim for breach of

fiduciary duty against the plan administrators); *Brown v. Connecticut General Life Insurance Co.*, 934 F.2d 1193, 1195 (11th Cir.1991) (holding that ERISA preempted a state action for a declaration of the rightful beneficiary of an ERISA-qualified group life insurance policy pursuant to a divorce agreement); *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir.1990) (holding that ERISA preempts a state-law claim for designation of beneficiary).

*Dial*, 174 F.3d at 610–11.

The Fifth Circuit also held that a plan administrator's interpretation of the meaning of a domestic relations order is not entitled to deference. Instead, the trial court should have considered the language of the parties settlement agreement using a de novo review. *Dial*, 174 F.3d at 611 and 613. *See also Matassarin*, 174 F.3d at 563–64 (court to review de novo a plan administrator's interpretation of the meaning of a QDRO).

 Under *Dial*, this court must conclude that although this action involves construction of a QDRO issued by a Texas divorce court, it is properly in federal court. However, for the reasons stated above, the court will not revisit the issue of whether the Amended QDRO is qualified within the meaning of ERISA—that issue is the subject of a final order by a court with concurrent jurisdiction over that issue.

Defendants also move to dismiss for the failure to state a claim and for the failure to join Shirley Jones, an allegedly indispensable party. The court will address first defendants' contention that plaintiff fails to state claims for which relief can be granted.

 Plaintiff's fourth cause of action is for injunctive relief under ERISA. By that claim plaintiff seeks to enjoin payment to nonparty Shirley Jones of the portion of the benefits he claims were awarded to him under the Amended QDRO. He seeks to enjoin the payments only until this case is resolved. Traditional injunction law applies to a claim for this type of injunction under ERISA. *See International Resources v. New York Life Ins.*, 950 F.2d 294, 302–03 (6th Cir.1991), *cert. denied*, 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992) (applying traditional four factors for granting injunction continuing medical benefits where bulk of plaintiff's claims were governed by ERISA). However, the Complaint does not allege that plaintiff would be irreparably harmed in the absence of injunctive relief. There are no facts alleged in the Complaint to show that money damages could not compensate plaintiff if he prevails on his claim that the Plan failed to pay him the full amount of benefits he was awarded under Amended QDRO. *Compare Williams v. Kerr Glass Mfg. Corp.*, 630 F.Supp. 266, 269 (E.D.N.Y.1986) (denying plaintiff's motion for preliminary injunction where no showing money damages would be adequate compensation for withdrawal of medical and life benefits.) The court finds that the factor of likelihood of prevailing on the merits is the only factor in favor of plaintiff and, standing alone, that factor is insufficient to state a claim for injunctive relief. Accordingly, plaintiff is not entitled to injunctive relief on the face of his complaint and the court will dismiss that claim for the failure to state a claim.

Plaintiff brings his claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3), based upon his allegations of wrongful denial of benefits and the failure to provide adequate notice in the Plan's March 27, 1998, denial of his claim. Plaintiff also contends that because the Amended QDRO is not qualified as to Plan A benefits, the Plan's payment of those benefits to Shirley Jones pursuant to that Order was a breach of ERISA's anti-alienation provisions and therefore a breach of the Plan's fiduciary duty. The latter contention is disposed of by the court's ruling that the issue of whether the Amended QDRO is qualified within the meaning of ERISA has already been determined. Be-

cause the order was qualified within the meaning of ERISA, it was not a violation of ERISA's anti-alienation provisions to pay benefits in accordance with the Plan Administrator's interpretation of the order.

Defendants also contend that an individual plan participant may not maintain a claim against a plan administrator for breach of fiduciary duty. Where a plan administrator breaches fiduciary obligations to individual plan participants or beneficiaries and thereby causes injury, § 1132(a)(3) may provide those individuals with a private cause of action. *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 1076–79, 134 L.Ed.2d 130 (1996). However, to be entitled to relief for breach of fiduciary duty under (a)(3) a plaintiff must be provided with no other adequate relief under ERISA. *Id.* at 1079 ("where Congress elsewhere provides adequate relief for a [participant's] injury, there will likely be no need for further equitable relief, [and] such relief normally would not be appropriate."); *Mein v. Pool Co. Disabled Int'l Employee Long Term Disability Benefit Plan*, 989 F.Supp. 1337, 1350 (D.Colo.1998) (dismissing claims for breach of fiduciary duty under § 1132(a)(3) where participant has available the remedy of enforcing the terms of the plan). *See also Walter v. Intern. Ass'n of Machinists Pension Fund*, 949 F.2d 310, 316 (10th Cir. 1991) (ERISA does not provide a private cause of action for damages to compensate participants for delay in disclosing requested information).

Here the plaintiff has the available remedy of recovering the disputed benefits from the Plan. Accordingly, the court will dismiss the § 1132(a)(3) claim for breach of fiduciary duty to the extent that it is premised on wrongful denial of benefits.

Plaintiff also claims a breach of fiduciary duty based on the Plan's failure to comply with ERISA's notice requirements when it denied his claim on March 27, 1998. The parties dispute whether plaintiff was injured by the failure to include the requisite information in the March 27, 1998, denial of his claim but defendants do not dispute that the notice was insufficient. [cite from brief]

ERISA's Section 1133 provides:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133(1), (2).

The regulations promulgated pursuant to 29 U.S.C. § 1133 provide:

(f) Content of notice. A plan administrator ... shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

(1) The specific reason or reasons for the denial;

(2) Specific reference to pertinent plan provisions on which the denial is based;

(3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f).

The notice in question is attached as Ex. L to the Complaint. On the face of the

denial it fails to include the required information. Clearly the defendants failed to abide by § 1133 and the corresponding regulations. Whether the notice received was adequate in accordance with § 1133 and the regulations is a question of law. However, defendants assert that plaintiff was not harmed by inadequate notice.

Faced with a similar lack of adequate notice, the court in *Rutledge v. American General Life and Accident Insurance Co.,* 871 F.Supp. 272 (N.D.Miss.1994) held as follows:

> A decision to deny benefits under a plan covered by ERISA will be overturned when "(1) arbitrary and capricious, (2) not supported by substantial evidence, or (3) errors on a question of law." *See Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 99–100 (5th Cir.1979). The initial denial notice wholly failed to provide the plaintiff with the specific notice requirements set forth in 29 C.F.R. § 2560.503–1(f). Since the plaintiff was not given adequate notice, the plaintiff was denied a full and fair review under § 1133. *See Wildbur,* 974 F.2d at 639 ("... assuming that both parties were given an opportunity to present facts to the administrator."). Instead of this court accepting the evaluation by Dr. Senter, and reviewing the evidence of the plaintiff's disability, it is appropriate that this matter be remanded for further review by the plan administrator. *See Wolfe,* 710 F.2d at 394.

*Rutledge,* 871 F.Supp. at 278.

The *Rutledge* holding is in accord with the other courts that have found that the remedy for the failure to give adequate notice is to remand for a redetermination of the denial of the claim. See *Counts v. American General Life and Acc. Ins. Co.,* 111 F.3d 105 (11th Cir.1997) (usual remedy for inadequate ERISA benefits termination letter is remand to plan administrator for out-of-time administrative appeal); *Weaver v. Phoenix Home Life Mut. Ins. Co.,* 990 F.2d 154 (4th Cir.

1993) (normally where plan administrator has failed to comply with ERISA's procedural guidelines proper course is remand to administrator for out-of-time administrative appeal unless evidence clearly shows administrator abused discretion in denying claim); *Jenkinson v. Chevron, Corp.,* 634 F.Supp. 375 (N.D.Cal.1986) (remand is only relief available for violation of ERISA-governed disability plan claims procedure). In *Sage v. Automation, Inc., Pension Plan & Trust,* 845 F.2d 885, 895 (10th Cir.1988), the Tenth Circuit noted that procedural defects in a claims process do not necessarily require that a plan's determination be overturned if the claimant has had an opportunity to be heard and therefore had a full and fair hearing.

█ In this case plaintiff was not given adequate notice. He contends that the lack of adequate notice deprived him of an opportunity of a full and fair review under § 1133. Plaintiff's Surreply at 6–7. Because the notice is insufficient and plaintiff claims he was prejudiced by the lack of the required information, rather than having this court review the question of the denial of plaintiff's claim to determine if he was prejudiced by the failure to provide an adequate notice, it is appropriate that this matter be remanded for further review by the plan administrator. *Rutledge,* 871 F.Supp. at 278 (N.D.Miss.1994).

This remand to the plan administrator disposes of plaintiff's first and second clauses of action. It appears to the court that such remand for a redetermination of benefits after proper notice of plaintiff's appeal rights is the appropriate action in this case. Such remand for a redetermination also allows plaintiff the option to seek a clarification or enforcement of the Amended QDRO in the forum with jurisdiction to clarify that order, to "specify more precisely the manner of effecting the property division," or to enforce the property division. Tex. Family Code §§ 9.006(a) and (b) and 9.002. That court

is also a forum with the power to enforce its order against the Plan if necessary.

Depending upon the Plan Administrator's decision after adequate notice and redetermination or upon the outcome of any clarification and/or contempt proceedings in the meantime, a future lawsuit to recover the disputed benefits may not be necessary.

Further, even if the court did not remand plaintiff's first and second causes of action to the Plan Administrator for a redetermination of plaintiff's claim, the court would dismiss those claims for the failure to join an indispensable party.

To determine if non-party Shirley Jones is an indispensable party to plaintiff's cause of action for benefits the court first looks to plaintiff's contentions. For the Plan A or defined benefits, plaintiff's position is that the Plan improperly used its own formula to divide the Plan A benefits rather than the formula required by Texas case law on community property. Plaintiff contends that because the Amended QDRO does not specify the formula to divide the Plan A benefits, the Plan must apply the formula approved by the Texas courts for defined benefits plans. See *Baw v. Baw*, 949 S.W.2d 764, 768 and n. 2 and 3 (Tex.App.Dallas 1997) (explaining the difference between defined benefit plans and defined contribution plans). The heart of plaintiff's dispute with the Plan over the Plan B benefits is whether in the Amended QDRO's phrase "fifty percent of the contributions made and the *total accumulated value* attributable to them in the Plan for the period beginning with the date of marriage, . . ., and ending with the date of divorce"; the "total accumulated value" accruing during the marriage includes the increases to pre-marital contributions. Plaintiff's position is that the phrase does not include increases to his premarital contributions. In contrast, defendants' position is that the phrase *does* include increases to plaintiff's premarital contributions.

Plaintiff relies upon an unpublished case, *Johnston v. Capital Accumulation Plan of the Chubb Corporation*, 1998 WL 907002 (N.D.Tex.1998), for the proposition that plaintiff's former wife is not an indispensable party. In *Johnston* the court held that the absent spouse was not an indispensable party to plaintiff claims against her pension plan for benefits awarded under a divorce. The court does not find *Johnston* to be persuasive.

█ The court finds that non-party Shirley Jones is an indispensable party to plaintiff's claim for benefits and his cause of action to enjoin payment of benefits to her. All of the factors as listed in *Thunder Basin Coal Co., supra*, 104 F.3d at 1211, weigh in favor of a finding that Shirley Jones is an indispensable party to any order that reduces or stops plan benefits currently paid to her. There can be no doubt that a judgment stopping or reducing her current benefits in her absence would be prejudicial to Shirley Jones. The court would be unable to formulate protective provisions in the final judgment in this case or in a preliminary injunction to lessen or avoid prejudice to her. No judgment or preliminary injunction rendered in Mrs. Jones' absence will be adequate because she would not be foreclosed from subsequently seeking to enforce the QDRO in Texas by a contempt proceeding or from seeking to have the Texas court clarify the QDRO in her favor. In the event the Texas divorce court rendered a clarification or contempt order in Mrs. Jones event, not only is there the possibility of the Plan's being subject to conflicting judgments, plaintiff could also possibly be subject to conflicting judgments. It should be remembered that the Amended QDRO makes plaintiff a constructive trustee of benefits he receives to the extent that the order assigns those benefits to Mrs. Jones. If plaintiff were to prevail on his claims for benefits in this action and then non-party Mrs. Jones were to obtain a conflicting judgment finding that the disputed benefits were issued to her; there is

a possibility that she may choose to enforce the constructive trust by means of a contempt proceeding or other action.

The last factor listed in *Thunder Basin Coal Co., supra,* 104 F.3d at 1211, also weighs in favor of a finding that Shirley Jones is an indispensable party to any order that reduces or stops plan benefits currently paid to her because plaintiff has an adequate remedy if this action were to be dismissed for nonjoinder. He retains the ability to seek to enforce his claims for benefits under ERISA in a Texas state court because the state courts have concurrent jurisdiction over a Plan participant's claim for benefits under the Plan, to enforce his rights under the Plan or to clarify his rights to future benefits under the Plan. 29 U.S.C. § 1132(a)(1)(B) and (e)(1). The Texas divorce court also retains jurisdiction to enforce by contempt or otherwise the property division or to clarify the Decree of Divorce or the Amended QDRO. Tex. Family Code Ann. §§ 9.002 and 9.006 and 9.008. The Texas Divorce court has previously enforced its orders by subpoenaing the Plan Administrator's personnel to ensure compliance. If plaintiff is correct that the Plan Administrator has failed to comply with the Amended QDRO's directive that his separate property includes his premarital contributions to the plan and the increases attributable to those premarital contributions, the Plan Administrator is equally susceptible to such actions by the divorce court to enforce the Amended QDRO on plaintiff's behalf.

Plaintiff contends that Shirley Jones is not indispensable because she has the ability to intervene to protect her interests or because the defendants have the ability to bring her in as a third-party defendant. In support, plaintiff points out that ERISA provides for nationwide service of process. See 29 U.S.C. § 1132(e)(2) ("process may be served in any other district where a defendant resides or may be found").

However, contrary to plaintiff's position, the Tenth Circuit did not determine that the availability of interpleader or intervention, standing alone, was sufficient to make a nonparty not indispensable for the purposes of Fed.R.Civ.P. 19(b). *See Thunder Basin,* 104 F.3d at 1212 n. 5 (leaving issue for "another day").

For the foregoing reasons, it is therefore

ORDERED that defendants' Motion to Dismiss is GRANTED. It is further

ORDERED that plaintiff's claims for benefits in his first and second causes of action are DISMISSED AND REMANDED to the Plan Administrator for a redetermination of plaintiff's claim for benefits. It is further

ORDERED that plaintiff's fourth cause of action seeking an injunction is DISMISSED for the failure to state a claim for which relief can be granted. It is further

ORDERED that plaintiff's third cause of action for breach of fiduciary duty is DISMISSED to the extent it is based on the failure to pay benefits and for the alleged breach of ERISA's anti-alienation provisions. To the extent that plaintiff's third cause of action is premised on the failure to give adequate notice at the time of the denial of the claim plaintiff is afforded the remedy of the remand to re-determine his claim for benefits after an adequate notice.